UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LYNORE REISECK,

|                              | : |                        |
|------------------------------|---|------------------------|
|                   Plaintiff, | : | Docket No.: 06 cv 0777 |
|                              | : |                        |
|  -against-                   | : |                        |
|                              | : |                        |

UNIVERSAL COMMUNICATIONS OF MIAMI,
INC., d/b/a UNIVERSAL MEDIA, BLUE
HORIZON MEDIA, INC., DOUGLAS GOLLAN,
CARL RUDERMAN, GEOFFREY LURIE, and
DAVID BERNSTEIN in their individual and
corporate capacities,

|                              | : |
|------------------------------|---|
|                  Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


**KANE KESSLER, P.C.**
*Attorneys for Defendants*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

#275173.3

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ *ii*

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 4

APPLICABLE LEGAL STANDARD ............................................................................... 4

ARGUMENT ...................................................................................................................... 5

POINT I.
COMMUTING FROM FLORIDA TO NEW YORK IS NOT A
PROTECTED RECREATIONAL ACTIVITY UNDER LABOR LAW §201-d ............. 5

POINT II.
PLAINTIFF'S GENDER DISCRIMINATION CLAIM IS
WHOLLY UNSUPPORTED BY THE FACTS
AND MUST BE DISMISSED AS A MATTER OF LAW ............................................. 9

POINT III.
PLAINTIFF'S CLAIM FOR OVERTIME WAGES MUST BE DISMISSED SINCE
SHE IS EXEMPT FROM RECEIVING OVERTIME PAY ......................................... 14

POINT IV.
PLAINTIFF'S STATE LAW CLAIM FOR OVERTIME WAGES ............................. 21

POINT V.
PLAINTIFF'S CLAIM FOR UNPAID COMMISSIONS IS
UNSUPPORTED BY THE UNDISPUTED FACTS ...................................................... 23

POINT VI.
LURIE, RUDERMAN, BERNSTEIN AND BLUE HORIZON WERE NOT
PLAINTIFF'S EMPLOYERS AND CAN THEREFORE NOT BE
LIABLE FOR ANY OF PLAINTIFF'S CLAIMS .......................................................... 24

POINT VII.
BLUE HORIZON WAS NOT PLAINTIFF'S JOINT EMPLOYER
AND CAN THEREFORE NOT BE
LIABLE FOR ANY OF PLAINTIFF'S CLAIMS .......................................................... 28

CONCLUSION ................................................................................................................... 30

#275173.3

## TABLE OF AUTHORITIES

*Cases*                                                                          *Page*

Alleyne v. Four Seasons Hotel New York
No. 99 Civ. 3432, 2001 WL. 135770 (S.D.N.Y. 2002) .................................................. 12

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986) ............................................................................................................ 4

Ansoumana v. Gristede's Operating Corp.
255 F. Supp. 2d 184 (S.D.N.Y. 2003) ............................................................................ 29

Bennett v. Watson Wyatt & Co.
136 F. Supp. 2d 236 (S.D.N.Y. 2001) ............................................................................ 10

Bilquin v. Roman Catholic Church
286 A.D.2d 409, 729 N.Y.S.2d 519 (2d Dept. 2001) ...................................................... 9

Carter v. Dutchess Community College
735 F.2d 8 (2nd Cir. 1984) .............................................................................................. 24

Celotex Corp. v. Catrett
477 U.S. 317 (1986) ............................................................................................................ 4

Chimarev v. TD Waterhouse Investor Services, Inc.
280 F. Supp. 2d 208 (S.D.N.Y. 2003) ............................................................................ 15

Chung v. New Silver Palace Restaurant
246 F. Supp. 2d 220 (S.D.N.Y. 2002) ......................................................................26, 27

Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.
778 F.2d 132 (2d Cir. 1985) ............................................................................................ 28

Cruz v. Coach Stores, Inc.
202 F.3d 560 (2d Cir. 2000) ............................................................................................ 10

Davis v. AT&T Wireless
157 Fed. Appx. 360, 2005 WL. 3263836 (2d Cir. 2005) ................................................ 10

Ellis v. Provident Life & Accident Insurance Co.
3 F. Supp. 2d 399 (S.D.N.Y.1998) ................................................................................. 22

Fields v. AOL Time Warner, Inc.
261 F. Supp. 2d 971 (W.D.Tenn. 2003) ......................................................................... 20

Fisher v. Vassar College
114 F.3d 1332 (2d Cir.1997) ........................................................................... 11

Gibson v. American Broadcasting Companies, Inc.
892 F.2d 1128 (2d Cir. 1989) ........................................................................... 4

Hornstein v. Negev Airbase Construction
110 A.D.2d 884, 488 N.Y.S.2d 435 (2d Dep't 1985) ....................................... 21

Hudson v. Goldman Sachs & Co., Inc.
283 A.D.2d 246, 725 N.Y.S. 2d (1st Dept. 2001) ............................................ 9

Kahn v. Superior Chicken & Ribs, Inc.
2004 WL. 1858267 (E.D.N.Y. 2004) ........................................................... 15, 16

Kilkenny v. Greenberg Traurig, LLP
2006 WL. 1096830 (S.D.N.Y. 2006) ........................................................... 28, 29

Landwehr v. Grey Adver. Inc.
211 A.D.2d 583, 622 N.Y.S.2d 17 (1st Dep't 1995).......................................... 10

Lee v. New York State Department of Health
2001 WL. 34031217  (S.D.N.Y. 2001) ............................................................. 13

Leopold v. Baccarat, Inc.
174 F.3d 261 (2d Cir.1999) ............................................................................. 10

Luciano v. Olsten Corp.
110 F.3d 210 (2d Cir.1997) ................................................................... 10, 11, 14

Matsushita Elect. Industrial Co., Ltd. v. Zenith Radio Corp.
475 U.S. 574 (1986) ........................................................................................ 4

McCavitt v. Swiss Reinsurance America Corp.
89 F. Supp. 2d 495 (S.D.N.Y. 2000) ............................................................... 8

McDonnell Douglas Corp. v. Green
411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)............................... 10, 11

Meiri v. Dacon
759 F.2d 989 (2d Cir.) .................................................................................... 5

Moon v. Kwon
248 F. Supp. 2d 201 (S.D.N.Y. 2002) .............................................................. 26

Murphy v. American Home Products Corp.
58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) ...................................... 8

N.L.R.B. v. Solid Waste Services, Inc.
38 F.3d 93 (2d Cir. 1994) .........................................................................................28

Ortiz v. Brookstone Co.
274 F. Supp. 2d 456 (S.D.N.Y. 2003) ................................................................11, 12

Ponticelli v. Zurich American Insurance Group
16 F. Supp. 2d 414 (S.D.N.Y. 1998) ...................................................................... 10

Reed v. A.W. Lawrence & Co., Inc.
95 F.3d 1170 (2d Cir.1996) ..................................................................................... 10

Reeves v. Sanderson Plumbing Products, Inc.
530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).......................................10

Resnick v. M & R Baking Co., Inc.
1970 WL. 2793, 19 Wage & Hour Cas. (BNA) 811,
63 Lab.Cas. P 32,370 (E.D.N.Y. 1970) ....................................................................20

Schwind v. EW & Associates, Inc.
357 F. Supp. 2d 691 (S.D.N.Y. 2005) .................................................15, 16, 17, 18

Shumway v. United Parcel Service, Inc.
118 F.3d 60 (2d Cir. 1997) .......................................................................................11

State v. Wal-Mart Stores, Inc.
207 A.D.2d 150, 621 N.Y.S.2d 158 (3rd Dept. 1995)............................................... 8

Tanay v. St. Barnabas Hosp.
No. 99 Civ. 9215, 2001 WL 262695, at *6-7 (S.D.N.Y. 2001)......................................12

Texas Department of Community Affairs v. Burdine
450 U.S. 248, 101 S. Ct. 1089 (1981) ......................................................................11

Tierney v. Capricorn Investors, L.P.
189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't 1993)..........................................21, 22

Wirtz v. Pure Ice Co.
322 F.2d 259 (8th Cir. 1963) ....................................................................................25

Zacholl v. Fear & Fear, Inc.
2004 WL. 725964 (N.D.N.Y. 2004).........................................................................16

<u>Zaitsev v. Salomon Brothers, Inc.</u>
60 F.3d 1001 (2d. Cir. 1995) ...........................................................21, 22

<u>Zheng v. Liberty Apparel Co.</u>
355 F.3d 61 (2d Cir. 2003) ...................................................................28

## STATUTES

29 U.S.C. §201 .......................................................................................3

29 U.S.C. § 213(a)(1) ......................................................................14, 19

29 C.F.R. § 541.2(e)(2) .........................................................................16

29 C.F.R. § 541.5 ..................................................................................19

29 C.F.R. § 541.103 .........................................................................16, 19

29 C.F.R. 541.503 ..................................................................................19

29 C.F.R. 541.507 ..................................................................................19

F.R.C.P. 56(c) .........................................................................................4

F.R.C.P. 56(e) .........................................................................................4

12 NYCCRR § 142-2.2 ..........................................................................14

New York City Administrative Code, §8-101 et seq...................................9

New York Labor Law §201-D...........................................................2, 5, 31

New York Labor Law §190 et seq. and $650 et seq.....................3, 14, 24, 26

New York Labor Law §191-c.........................................................3, 21, 23

New York Labor Law §191-a(b).............................................................23

New York Human Rights Law §290 et seq. ...............................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LYNORE REISECK,

                         **Plaintiff,**

      -against-

UNIVERSAL COMMUNICATIONS OF MIAMI,
INC., d/b/a UNIVERSAL MEDIA, BLUE
HORIZON MEDIA, INC., DOUGLAS GOLLAN,
CARL RUDERMAN, GEOFFREY LURIE, and
DAVID BERNSTEIN in their individual and
corporate capacities,

                         **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No.: 06 cv 0777

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Defendants Universal Communications of Miami, Inc. d/b/a Universal Media
("Universal" or the "Company"), Blue Horizon Media, Inc. ("Blue Horizon"), Douglas Gollan
("Gollan"), Carl Ruderman ("Ruderman"), Geoffrey Lurie ("Lurie") and David Bernstein
("Bernstein") (referred to collectively as "Defendants") respectfully submit this memorandum of
law in support of their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for an
order granting summary judgment and dismissing the amended complaint of Plaintiff Lynore
Reiseck ("Plaintiff") in its entirety and for such other, further and different relief as to the Court
seems just and proper.

Plaintiff's six causes of action are unsupported by the uncontested facts and accordingly,
must fail as a matter of law. Plaintiff, a former at-will employee of Universal, resigned from her
employment with Universal after she was told by her employer that he would not grant her
request to commute from Florida to Universal's offices in New York during the week. Plaintiff

attempts to characterize her commuting lifestyle as a hobby so that she can support her claim that Defendants violated New York's Labor Law §210-d, which prohibits an employer from discriminating against its employees based upon the recreational activities in which they choose to engage. However, it is clear that Plaintiff's separation from the Company was not based upon her recreational activities. Rather, it is undisputed that her separation was based upon Universal's belief that Plaintiff planned to commute 1500 miles each week to get to her place of employment, leaving the Company in a position where one of its key employees resided far from the territory in which she worked. In fact, as set forth more fully below, Plaintiff admits that Gollan's belief that Plaintiff intended to move to Florida and commute to New York was the precise concern that Gollan expressed when they discussed her separation.[1]

Plaintiff also asserts that Defendants Blue Horizon, Universal and Gollan allegedly discriminated against Plaintiff on the basis of her sex, claiming that she was treated differently than "its" male employees. See ¶¶48, 51 of Plaintiff's Verified Amended Complaint, annexed to the Overland Affirmation, dated October 26, 2007 as Exhibit "A".[2] However, in support of this claim, Plaintiff merely alleges that, Richard Ammon ("Ammon"), the publisher of a separate company, Ramp Media, inc. ("Ramp") was permitted to engage in a commuting lifestyle.[3] (Overland Aff., ¶23, Exh. "D"). This argument must fail as a matter of law since it is clear that Ammon was in a totally different position than Plaintiff. Ammon was the publisher of Ramp and Plaintiff was a salesperson at Universal. Ammon had completely different duties and responsibilities than Plaintiff, at a company which was wholly separate from Universal. Further,

---

[1] Notably, shortly after her separation from the Company, Plaintiff executed her plan to move to Florida and she has been residing there with her boyfriend ever since. She has obtained a real estate license in Florida and is running a real estate business there. (Overland Aff., ¶10, Exh. "I", pages 278:210-279:20, 255:12-256:6 and Overland Aff., ¶9, Exh. "H", pages 10:23-11:16, 14:22-17:20).

[2] All exhibits referred to herein are annexed to the Overland Affirmation and shall be referred to as Exh. "___".

[3] Interestingly, by asserting that Plaintiff was discriminated against since Ammon was permitted to commute and she was not, Plaintiff essentially admits that the basis for her separation was her commuting lifestyle, not her love of travel.

Ammon was not supervised by Gollan, the individual who told Plaintiff that he was not comfortable with her moving to Florida and commuting to New York. Clearly, the person upon whom Plaintiff relies to support her discrimination claim is not similarly situated to her. Thus, the single example provided by Plaintiff cannot support Plaintiff's claim of gender discrimination as a matter of law.

Plaintiff additionally alleges that Universal and Blue Horizon have withheld earned commissions due Plaintiff in violation of New York Labor Law, §191-c. First, it is undisputed that Defendants did not receive payment from their clients for the sales at issue. Second, it is undisputed that Universal does not pay commissions for uncollected accounts since a commission is not "earned" if Universal does not receive payment from the client for any given sale. The undisputed facts show that Plaintiff was paid commissions for each of her accounts where the customer paid Universal and that the only commissions which Plaintiff did not receive were for accounts that remain uncollected to this day. Accordingly, the evidence demonstrates that Plaintiff's fourth cause of action for a violation of §191-c is wholly without merit and this claim fails as a matter of law.

Finally, Plaintiff's claim that she was entitled to overtime wages pursuant to FLSA, 29 U.S.C. §201 et seq. must fail as a matter of law since Plaintiff earned a salary, received commissions and performed duties which exempt her from overtime wages. Further, since it is undisputed that Plaintiff did not have a contractual right to overtimes wages, her claim for overtime wages pursuant to New York Law, §190 et seq. and 650 et seq. must be dismissed as a matter of law.

In sum, Defendants' motion for summary judgment should be granted in its entirety because Plaintiff was not discriminated against based upon her protected "recreational

activities", her gender or otherwise and she was paid all of the wages and commissions to which she was entitled.

## STATEMENT OF FACTS

The facts and documents which are relevant to this motion are set forth in the accompanying affirmation of Gillian Overland, Esq., dated October 26, 2007 (the "Overland Aff."), the affidavit of Douglas Gollan, sworn to October 24, 2007 (the "Gollan Aff."), the affidavit of Carl Ruderman, sworn to October 15, 2007 (the "Ruderman Aff."), the affidavit of David Bernstein, sworn to October 15, 2007 (the "Bernstein Aff."), the affidavit of Geoffrey Lurie, sworn to October 15, 2007 (the "Lurie Aff.") and Defendants' Statement of Undisputed Facts, to which the Court is respectfully referred.

## APPLICABLE LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment if, when viewing the facts in a light most favorable to the nonmoving party, there are no genuine issues of material fact requiring a trial.  See, F.R.C.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Once a moving party presents appropriate support showing that there is no genuine issue of material fact, the nonmoving party must present support which sets forth sufficient specific facts about which a genuine issue of material fact remains.  FRCP 56(e).  The party who carries the burden of proof at trial must "make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Mere conclusory allegations will not suffice to survive summary judgment.  FRCP 56(e).  Gibson v. American Broadcasting Companies, Inc., 892 F.2d 1128 (2d Cir. 1989)(The party opposing the motion must allege facts to indicate that "a genuine issue - not merely one that is colorable - of material fact is present").

The non-movant's burden is no different in an employment discrimination case. "[T]he salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985).

## ARGUMENT

### POINT I.
### COMMUTING FROM FLORIDA TO NEW YORK IS NOT A PROTECTED RECREATIONAL ACTIVITY UNDER LABOR LAW §201-d

Plaintiff alleges that she was terminated from her employment "for her pursuit of her hobby of personal travel on weekends" in violation of Section 201-d of New York's Labor Laws. Exh. "D", ¶43.

Section 201-d (2)(c) specifies as follows:

Unless otherwise provided by law, it shall be unlawful for any employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of...an individual's legal recreational activities outside work hours, off of the employer's premises and without use of the employer's equipment of other property.

Pursuant to Section 201-d (1)(b), "recreational activities" is defined as follows:

"recreational activities" shall mean any lawful, leisure-time activity, for which the employee receives no compensation and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material.

Further, although an employer ordinarily may not discharge an employee for lawful off-hour protected recreational activities, an employer may discharge an employee for conduct that is detrimental to the company or that impacts an employee's job performance. See, New York Labor Law, Section 201-d (3)(a).

In order for Plaintiff to succeed in proving that Universal violated this statute, she will have to show that she was terminated for engaging in protected recreational activities. Plaintiff

5

argues that travel is a hobby and since hobbies are one of the enumerated recreational activities protected by the statute, her traveling should be protected as well. First, there is nothing to suggest that travel is protected by this statute.[4] Second, the undisputed evidence demonstrates that Plaintiff's separation from Universal had nothing whatsoever to do with any hobby in which Plaintiff engaged. Rather, it is undisputed that Gollan was solely concerned with Plaintiff moving to Florida and commuting from there to get to work.

The reason for Plaintiff's separation is clearly demonstrated by the following evidence:

1.    The state adjudicator for unemployment who spoke with Plaintiff and obtained Plaintiff's statement setting forth why Plaintiff believed that she was terminated from the Company memorialized Plaintiff's explanation as follows:

> "Her boss, Doug Gollan did not like the fact that she flew to Miami every other weekend to be with her boyfriend."

See Exh. "Y";

2.    On December 5, 2003, the same day that Plaintiff and Gollan discussed Plaintiff's desire to move to Florida and commute to work, Plaintiff wrote the following note in her calendar:

> "DG [Doug Gollan] tells me that he is not "okay" with me going to Florida on weekends. So I would have to give him 90 days to find someone else if I choose to do so."

See Exh. "O".

3.    On January 13, 2004, the same day that Plaintiff told Gollan that she was going to be traveling to and from Florida, she made the following notation in her calendar:

> "Told DG I was going to start going to Florida on weekends. He said he'd write up the 90-day thing. Also said I thought I would break up with DP if it meant losing my job."

---

[4] There are no cases which hold that travel is a protected activity and the courts have narrowly construed the statute to protect only those activities which are specifically enumerated therein.

See Exh. "O".

4.    On February 2, 2004, Plaintiff wrote the following in her calendar:

> "2-2, spoke with DG and asked him to please in short stop telling people I'm moving because it will impede my job search.  Told him Chris Gibbons said congrats on the move per DG.  DG said he didn't say that.  Said I was having a commuting lifestyle.  I reiterated that it was only Friday night to Sunday night".

See Exh. "O".

5.    Plaintiff, in describing the alleged disparate treatment upon which she bases her gender discrimination claim, states as follows:

> "Upon information and belief, another employee of Defendant Horizon named Richard Ammon, a male, commutes to work from Florida and is lodged in a New York City hotel each week at company expense."

See Exh. "D", ¶23.

6.    Further, when asked about the nature of Gollan's concern, Plaintiff testified as follows:

> Q:  When Doug said that he had a problem with you traveling on weekends, it was in connection with seeing your boyfriend, wasn't it?
> A:  I cannot answer what Doug was thinking.
> Q:  Didn't he say that?
> A:  That is where he was pulling this information from, his belief that I was moving down there.
> Q:  To see your boyfriend?
> A:  That I was moving to Florida because my boyfriend was there.

See Exh. "H", page 91:6-91:18.

Since it is clear that Gollan was solely concerned with Plaintiff commuting from Florida, the Court must determine whether commuting from Florida is a protected recreational activity under the statute.  There is no case law which holds that commuting constitutes a protected recreational activity.  Just as taking the subway to work each day is not a hobby, flying in an

airplane to commute to and from work or to visit a friend, is not a hobby either.  Simply put, Plaintiff's separation from the Company was not a violation of this statute.

"Absent a Constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." McCavitt v. Swiss Reinsurance America Corp., 89 F. Supp. 2d 495 (S.D.N.Y. 2000), quoting, Murphy v. American Home Products Corp., 58 N.Y. 2d 293, 305, 461 N.Y.S. 2d 232, 448 N.E. 2d 86 (1983).  Because of the presumption of an employment at will in this State, New York Courts strictly construe statutes in derogation of the common law right of an employer to terminate an employee, "for no reason, or for a bad reason." Id. at 498.  Since Section 201-d of the Labor Laws limits an employer's right to terminate an employee at will, Courts have interpreted the statute narrowly.

There are very few cases in which the statute in question has been interpreted but the cases which exist support Defendants' position that commuting from another state would not be considered a "recreational activity" under the statute.  In McCavitt v. Swiss Reinsurance America Corp., supra, 89 F. Supp. 2d 495 (S.D.N.Y. 2000), the District Court, Brient, J., granted Defendant's motion to dismiss the complaint of its former employee, which asserted that the plaintiff was terminated in violation of Section 201-d for being in a relationship with a colleague. The Court held that the plaintiff's dating relationship with a fellow employee was not a "recreational activity" within the meaning of the statute.  The Court reasoned that if an employer terminates someone for being in a relationship, the employee is being terminated for "dating" someone, not for the particular activities the employee is engaging in on those dates. Id. at 497, relying upon State v. Wal-Mart Stores, Inc., 207 A.D.2d 150, 159, 621 N.Y.S.2d 158 (3rd Dept. 1995), which held that "an indispensable element of 'dating', in fact its *raison d'etre*, is romance" and although a couple may go bowling and call that activity a date,  the purpose

8

behind the activity is the relationship, not the activity itself. Id. at 159; see also, Hudson v. Goldman Sachs & Co., Inc., 283 A.D.2d 246, 725 N.Y.S. 2d (1st Dept. 2001) (Employee's extramarital affair with a coworker was not a "recreational activity" and therefore, the employee's termination for having an affair did not violate Labor Law Section 210-d); Bilquin v. Roman Catholic Church, 286 A.D.2d 409, 729 N.Y.S.2d 519 (2nd Dept. 2001) (cohabitating with a man who was married to another woman did not constitute a "recreational activity" within the meaning of Labor Law Section 210-d).

Here, it is clear that Plaintiff's travel was not a protected recreational activity. In fact, it was not a recreation activity at all. Rather, Plaintiff's activity was commuting to New York each week from Florida. More importantly, it is undisputed that Gollan's concern was that Plaintiff was moving far away from her place of employment. There is no evidence in this case to suggest that Plaintiff's alleged love of travel was the basis for her separation and the suggestion that the publisher of a travel magazine would discriminate against an employee for her love of travel is plainly ridiculous. Applying the above holdings to the instant facts, it is clear that Plaintiff's commuting lifestyle is not a "recreational activity" which is protected under the statute, that Gollan did not terminate Plaintiff for engaging in recreational activities and that Gollan was well within his right to terminate this at will employee based on his belief that she planned to move to Florida and to commute to New York.

## POINT II.
### PLAINTIFF'S GENDER DISCRIMINATION CLAIM IS WHOLLY UNSUPPORTED BY THE FACTS AND MUST BE DISMISSED AS A MATTER OF LAW

Plaintiff also asserts a cause of action against Universal, Blue Horizon and Gollan for gender discrimination in violation of New York Human Rights Law, §290 et. seq. and New York City Administrative Code, §8-101 et seq. based upon the single contention that Ammon, the

publisher of a separate company, commuted to New York from Florida and that, by telling Plaintiff that she could not commute from Florida, she was treated disparately from a male employee. See Exh. "D", ¶¶22, 23, 47-53. As set forth more fully below, Plaintiff's gender discrimination claims fail as a matter of law since Plaintiff offers no evidence of a similarly situated male employee being treated differently. See, Davis v. AT&T Wireless, 157 Fed. Appx. 360, 2005 WL 3263836 (2d Cir. 2005) (Summary judgment was granted to employer where no reasonable juror could conclude that employee was similarly situated to male co-worker); Ponticelli v. Zurich American Insurance Group, 16 F. Supp. 2d 414 (S.D.N.Y. 1998) (summary judgment was granted to defendant where plaintiff, an underwriting assistant, compared the way that she was treated with the way that the company treated managers and underwriters).

Plaintiff's claims for discrimination under the New York Human Rights Law and the NYC Administrative Code are governed at the summary judgment stage by the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] See, Bennett v. Watson Wyatt & Co., 136 F.Supp.2d 236, 245 n. 4 (S.D.N.Y. 2001) (claims under the New York Human Rights Law are analyzed under the McDonnell Douglas burden shifting framework). Under the McDonnell Douglas test, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir.1997).

To state a prima facie case of discrimination, Plaintiff must allege that she (1) is a

---

[5] The standards governing actionable conduct under the Human Rights Law and the Administrative Code "parallel" those applied to Title VII. See, Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir. 2000), citing to, Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n. 1 (2d Cir.1999) (New York state law) and Landwehr v. Grey Adver. Inc., 211 A.D.2d 583, 622 N.Y.S.2d 17, 18 (1st Dep't 1995) (New York Administrative Code); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir.1996) (Claims brought under Section 296 of the New York Executive Law, New York's Human Rights Law, can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII of Federal Law).

member of a protected class; (2) was performing her job satisfactorily; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. McDonnell Douglas, supra, 411 U.S. at 802. This last element of a prima facie case may be proven by showing that a similarly situated man was treated differently than the plaintiff. See, Ortiz v. Brookstone Co., 274 F. Supp.2d 456 (S.D.N.Y. 2003).

When a plaintiff has successfully demonstrated the elements of a prima facie case, the burden of production shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the employer's challenged action. See Luciano, supra, 110 F.3d at 215. After the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that her membership in a protected class was. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-256, 101 S.Ct. 1089 (1981); Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir.1997) (The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff).

To establish the fourth element of a prima facie case, the plaintiff must show that she was treated differently than "similarly situated" males. Shumway v. United Parcel Service, Inc. 118 F.3d 60, 64 (2d Cir. 1997). To be "similarly situated," the individuals with whom a plaintiff attempts to compare herself must be similarly situated in all material respects. Id. In Shumway, supra, the plaintiff submitted an affidavit in opposition to the defendant's summary judgment motion, alleging that "numerous male supervisory employees violated the [no fraternization] policy ... and no disciplinary action was taken against these employees." The Court held that these allegations were insufficient since none of the individuals the plaintiff claimed violated the

11

"no fraternization" policy were supervised by the same individuals as the plaintiff.  The Court reasoned that employees are not "similarly situated" merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it. Id. at 64.

In Ortiz, supra, the Court granted the defendant's motion for summary judgment, holding that the plaintiff was not terminated under circumstances giving rise to an inference of discrimination since she was not "similarly situated" to the one male colleague who she claims was treated differently than her.  Ortiz, supra, 274 F.Supp.2d at 463.  In reaching its decision, the Court noted that the plaintiff was a manager in training, while the male with whom she compared herself was a manager.  Further, the Court noted that the male was a permanent employee of the company, while the plaintiff was not.   They had different responsibilities and were not supervised by the same individual. Based upon these facts, the Court concluded that the plaintiff had not established a prima facie case of discrimination and the Court granted the defendant's summary judgment motion as a matter of law since "in the absence of evidence of discrimination and in the face of the clearly non-discriminatory reasons proffered by the defendants, no reasonable juror could find that discriminatory animus was a motivating factor in Ortiz's termination." Id. at 464, citing to, Tanay v. St. Barnabas Hosp., No. 99 Civ. 9215, 2001 WL 262695, at *6-7 (S.D.N.Y. 2001); Alleyne v. Four Seasons Hotel New York, No. 99 Civ. 3432, 2001 WL 135770, at *11-13 (S.D.N.Y. 2002), aff'd, 25 Fed.Appx. 74, 2002 WL 109353 (2d Cir. 2002).

Assuming arguendo Plaintiff had sufficient evidence to establish that she suffered an adverse employment action (which is denied by Defendants),[6] summary judgment would be warranted because there is no evidence that could sustain a finding as to the fourth element of the *McDonnell Douglas prima facie* case, *i.e.*, there is no evidence that could sustain an inference of discrimination in connection with any actions taken against her.

Plaintiff's gender discrimination claim rests solely upon her contention that "another employee of Defendant Horizon named Richard Ammon, a male, commutes to work from Florida and is lodged in a New York City hotel each week at company expense." Exh. "D", ¶23. However, as set forth in the deposition testimony and the affidavits of Defendants, Ammon and Plaintiff were not "similarly situated" for numerous reasons, including but not limited to:

    (a)    Ammon and Plaintiff held completely different positions:  Ammon was a publisher while Plaintiff was the Regional Director of Sales. See, Exh. "H", pages 168:22-169:6;

    (b)    Ammon was the publisher of a wholly separate company, called Ramp Media while Plaintiff worked in sales for Universal.  See Gollan Aff. ¶39;

    (c)    Plaintiff was supervised by Gollan, who it is undisputed was the person that told Plaintiff that she could not continue to work for Universal if she decided to move to Florida and commute to New York.  Gollan did not supervise, direct or oversee Ammon, nor did he have any involvement in any employment decisions relating to Ammon, including whether or not he could commute.  See Gollan Aff. ¶35-43;

    (d)    Ammon and Plaintiff had completely different duties and responsibilities:  Ammon was responsible for publishing a magazine called Ramp for Ramp Media while Plaintiff was responsible for selling ad space for Elite Traveler, which was the magazine that was published by Universal. See Gollan Aff. ¶40.

Since Ammon and Plaintiff were not similarly situated and since Ammon's commuting is the only basis for Plaintiff's gender discrimination claim, there is no evidence that could support an inference of discrimination.  See, <u>Lee v. New York State Dept. of Health</u>, 2001 WL 34031217

---

[6]  Plaintiff's employment was not terminated.  Plaintiff asked Gollan if it would be acceptable to commute to work from Florida.  Several weeks after being told such activity would not be acceptable, Plaintiff told her employer that she intended to engage in this activity anyway.  Thus, it was Plaintiff's decision to leave her employment.

(S.D.N.Y. 2001) (Summary judgment granted where there were no material facts to demonstrate that the plaintiff was similarly situated to her colleagues). Further, Gollan had a legitimate nondiscriminatory basis for advising one of the Company's key employees that she could not move to Florida and commute to New York for work. See, Luciano, supra, 110 F.3d at 215. Accordingly, Plaintiff's claims of gender discrimination under the Human Rights Law and the Administrative Code must fail as a matter of law.

## POINT III.
## PLAINTIFF'S CLAIM FOR OVERTIME WAGES MUST BE DISMISSED SINCE SHE IS EXEMPT FROM RECEIVING OVERTIME PAY

Plaintiff asserts two causes of action for overtime wages pursuant to, respectively, the Fair Labor Standards Act ("FLSA") and New York State Labor Law, §§190 et seq. and 650 et seq. However, Plaintiff was an "administrative employee" and/or an "outside salesperson" within the meaning of 29 U.S.C. § 213(a)(1), which exempts those employees from the overtime provisions of the FLSA.[7]

The Secretary of Labor promulgated regulations to implement the FLSA and, with respect to determining whether an employee falls within the Section 213(a)(1) exemption, set forth two different tests, a short test and a long test. Whether a court should apply the "short test" or the "long test" depends on whether the employee makes more or less than $250 per week. Since Plaintiff's starting salary was $75,000 plus commissions and bonuses and Plaintiff testified that she earned $151,000.00 in 2003 (her last year with the company), there can be no dispute that Plaintiff made more than the required $250.00 per week. Accordingly, the short test applies to the present case.

---

[7] Pursuant to the regulation which implements New York State Labor Law, §§190 et seq. and 650 et seq., the FLSA standards must be applied in determining exemptions from New York State overtime laws. See, 12 NYCCRR § 142-2.2. Accordingly, since Plaintiff was exempt under the FLSA, so too is she exempt under New York State Labor Law, §§190 et seq. and 650 et seq.

The short test consists of two independent criteria, the "salary basis" requirement and the "duties" test, both of which must be met in order for an employee to be exempt from the overtime provisions of the FLSA. See, <u>Schwind v. EW & Associates, Inc.</u>, 357 F.Supp.2d 691 (S.D.N.Y. 2005). To satisfy the "salary basis" requirement, an employer need only show that the employee received a predetermined amount each pay period, constituting all or part of his/her compensation, which amount is not subject to reduction because of variations in quality or quantity of work performed. <u>Kahn v. Superior Chicken & Ribs, Inc.</u>, 2004 WL 1858267 (E.D.N.Y. 2004).

Plaintiff testified that she received a predetermined amount each pay period, which constituted the salary portion of her compensation.[8] In addition to her salary, Plaintiff received commissions plus a bonus. Plaintiff's salary was not reduced based on the quality or quantity of the work that she performed. See Gollan Aff., ¶49. Plaintiff received the same bi-weekly pay irrespective of the quality of her work and even if she was absent from work for being ill. See Gollan Aff., ¶49. As such, the undisputed facts demonstrate that Plaintiff met the "salary basis" requirement to exempt her from overtime wages as a matter of law. See, <u>Chimarev v. TD Waterhouse Investor Services, Inc.</u>, 280 F.Supp.2d 208 (S.D.N.Y. 2003) (Computer programmer who received his salary on a semi-monthly basis, and was never subject to a reduction in his compensation due to variations in the quality or quantity of the work he performed, was paid on a "salary basis" and thus was ineligible for overtime wages under the FLSA).

To meet the "duty test" as an administrative employee, one's primary duty must consist of the "performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers ... which includes work

---

[8] Q: How often were you paid? A: Every two weeks. Q: Okay. A: Pardon Me. My salary was paid every two weeks. See Exh. "I", pages 288:15-288:19.

requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2).  The regulations provide that "it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103.  However, time alone ... is not the sole test and an employee may nevertheless have management as his/her primary duty if other pertinent factors support such a conclusion.  Kahn v. Superior Chicken & Ribs, Inc., 2004 WL 1858267 (E.D.N.Y. 2004).

Schwind, supra, is particularly instructive in helping this Court determine whether Plaintiff qualifies for the overtime exemption.  The plaintiff in Schwind argued that he was entitled to overtime wages since he was merely a salesperson for the company.  However, the Court held that, despite plaintiff's position as a salesperson, he was not entitled to overtime wages.  The Court looked at the following factors in reaching its conclusion:  Plaintiff had to be on-site with clients and handle client relations and client services, plaintiff acted as a liaison between the company and some of its major clients, he proposed business deals to clients and negotiated many contracts; plaintiff also directed fellow employees in accomplishing the goals of the company and represented the company, negotiated contracts, promoted sales and was involved in business research and control.  The Court also noted that Plaintiff exercised discretion and independent judgment in performing his duties.  Looking at all of these factors, the Court concluded that plaintiff's duties were such that he was "engaged in activities relating to the administrative operations of the business." Id . at 704, citing to, Zacholl v. Fear & Fear, Inc., 2004 WL 725964 (N.D.N.Y. 2004).

Here, Plaintiff, as Regional Director of Sales for Universal was in a similar position to the plaintiff in Schwind.  Plaintiff handled client relations, proposed deals to clients, negotiated contracts and supervised Universal employees. See Exh. "D", ¶17 and Exh. "H", pages 34:6-34:10.  Plaintiff also exercised independent judgment and discretion in performing her duties:

16

Q: How did you determine what needed to be done?
A: Well, if I had five sales calls the next day, from experience I knew that meant that I would have to have five media kits prepared. I would have any research that I needed to have with me prepared. If there was a proposal that was going to be presented that would need to be prepared.

See Exh. "I", page 302:17-302:24.

Plaintiff also directed fellow employees:

Q: And you said that you would ask a sales assistant to do something. What would the sales assistant do?
A: I would ask my sales assistant to cut and paste imagery. If I was doing a proposal for, say, British Airways, I would ask them to find me images to put into the proposal to make it look nice. If I needed certain research information, I'd ask them, could you please get that from marketing.

See Exh. "I", pages 307:21-308:6.

Q: Did you ever ask them to do something again because you didn't think it was right or you wanted it improved or anything like that, or did they always give you exactly what you wanted?
A: I'm sure there were times that there were things that maybe weren't done as I had specifically requested. So I ended up redoing it or asking them to just change a font. Or I might have found more information that I wanted to add and I asked them to, you know, fix it or change it. Or that I needed something else.

See Exh. "I", pages 310:19-311:5.

Further, much like the plaintiff in <u>Schwind</u>, Plaintiff was responsible for visiting clients,

entertaining clients, developing new clients, negotiating contracts and promoting the company.

Q: Approximately, if you can, how much of your time was spent visiting clients outside of New York?
A: 50-50.

See Exh. "I", page 323:18-323:21.

Q: For what reasons would you be waking up in Germany?
A: Because I was requested to be at a convention or a conference or sales calls out of the New York area.
Q: For what reasons would you be waking up in Canada?
A: Sales calls.

See Exh. "I", pages 289:23-290:6.

17

Q: When you say you "entertained them", what does that mean?
A:  Chitchat.  Talk about life.  Get to know them.  Buy them dinner.  Buy them a cocktail maybe.  Gambled a little.  Watched them gamble.  I don't gamble.

See Exh. "I", page 361:5-361:10.

Q:  At Universal Media you were given a list of clients to try to sell advertising to; is that correct?
A:  Yes and no.
Q:  Well, what do you mean by that?
A:  Yes, I was given a client list; no because I also went outside of that list to find new clients and add to that list.
Q:  So, is it fair to say that part of your job was to develop new clients as well as to sell to existing clients?
A:  Yes.

See Exh. "I", page 387:8-387:19.

Q:  And within that variation how would you determine what to quote a particular potential client?
A:  When I first came to it Doug had to approve everything.  And as time went on he started telling me to stop coming in.  That I knew how to do it.  But in the beginning I absolutely had to go to Doug for every single rate quote to get his approval.
Q: When he told you you no longer had to come in, you knew how to do it, how would you make the determination what the rates would be?
A:  Well, obviously-well, not obviously.  Sorry. It was in my best interest to get the highest rate possible because I was paid on commission based on the rate that the client paid.  So I would obviously go for the highest rate possible.

See Exh. "I", pages 397:10-398:3.

Applying the Schwind holding to the instant matter, it is clear that Plaintiff qualifies under the administrative employee exemption and she is not entitled to overtime compensation. Plaintiff had a great deal of autonomy, she supervised and directed other employees, she was responsible for visiting, entertaining and servicing existing clients as well as developing new ones, she represented the Company at conventions and conferences throughout the world and she negotiated client contracts.  Therefore, Plaintiff meets the "duty test" requirement under the statute as well as the salary test since, as noted above her starting salary was $75,000 and she earned an income of $151,000 in 2003.

18

Further, Plaintiff is exempt from receiving overtime wages by virtue of her status as an outside salesperson. "Any employee employed ... in the capacity of outside salesman (as such term[ ][is] defined and delimited from time to time by regulations of the Secretary [of Labor] ...)" is exempted from the FLSA's requirements including the overtime provisions. See, 29 U.S.C. § 213(a)(1). The Secretary of Labor, exercising this delegated authority, has promulgated regulations to define the "outside salesman" exemption. 29 C.F.R. § 541.5. These regulations provide that the term outside salesman shall mean any employee:

(a)    Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:
       (1)    Making sales within the meaning of section 3(k) of the Act; or,
       (2)    Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and,

(b)    Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, that *work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.* 29 C.F.R. § 541.5 (emphasis added).

The regulations explain that, [t]he 20 percent is computed on the basis of the hours worked by nonexempt employees of the employer who perform the kind of non-exempt work performed by the outside salesman. If there are no employees of the employer performing such non-exempt work, the base to be taken is 40 hours per week, and the amount of non-exempt work allowed will be 8 hours a week.  § 29 C.F.R. 541.507.

The regulations further specify that "work performed 'incidental to and in conjunction with the employee's own outside sales or solicitation' includes not only incidental deliveries and collections ... but also any other work performed by the employee in furthering his own sales efforts." <u>29 C.F.R. § 541.503</u> ("Work performed incidental to and in conjunction with the employee's own outside sales or solicitations would include, among other things, the writing of

his sales reports, the revision of his own catalog, the planning of his itinerary and attendance at sales conference").

In Resnick v. M & R Baking Co., Inc., 1970 WL 2793, 19 Wage & Hour Cas. (BNA) 811, 63 Lab.Cas. P 32,370 (E.D.N.Y. 1970), the Court granted summary judgment to an outside salesperson's employer, reasoning that the employee primarily performed outside sales and, with respect to his non-sales activities, the Court reasoned as follows: "Nor can inquiry into the quantum of non-sales activity help where, as here, it is incidental to and in conjunction with the plaintiff's own outside sales and solicitations." See also, Fields v. AOL Time Warner, Inc., 261 F.Supp.2d 971 (W.D.Tenn. 2003)(Holding that direct sales representatives (DSRs) for cable services providers were "outside salesmen," and thus their positions were exempt from overtime provisions of the FLSA. The Court reasoned that DSRs were employed for the purpose of, and did regularly and customarily engage in, selling cable services away from provider's office, and DSRs' other duties, including auditing residential customers for illegal cable use and collecting bad debt, were "incidental to and in conjunction with" their sales or solicitation activities).

Applying the above holdings, it is clear that Plaintiff was also exempt from receiving overtime wages, as an outside salesperson. Plaintiff alleges that she worked as the Regional Director of Sales, with a territory covering the NorthEast/Midwest/Eastern Canada and Bermuda. See Exh. "D", ¶4. Plaintiff admits that her job involved significant outside sales work; "Plaintiff's responsibilities involved traveling for trade shows, sales meetings, client meetings, and to sell advertising space and listings in the magazine." See Exh. "D", ¶4, see also, Exh. "H", page 34:4-34:10:

> Q: What do you recall being said about your work schedule?
> A: That I would travel extensively, that I would travel, I would have to be okay with traveling on weekends, on nights, that I would have to be open to entertaining, and I said that was fine.

The entire nature of Plaintiff's job was to sell advertising space for the magazine. When she was not performing outside sales, she was primarily performing work that was incidental to her outside sales.

> Q:  What hours did you generally work?
> A:  When I was not traveling for business and when I was not entertaining clients, I worked 9:30 to 6:00/6:30 on average. Many times I would go until 7:00, 7:30, 8:00.
> Q:  When you worked, what was the reason that you didn't leave at 5:00 every day?
> A:  There was work to be done.
> Q:  When you stayed until 8:00, what was the reason you stayed until 8:00?
> A:  Because there was a request for a proposal that needed to get out. There was paperwork that needed to get done. There were preparations for the next day's sales calls that needed to be done.

See Exh. "I", pages 301:22-302:11

As such, since Plaintiff meets the salary and duties requirements to qualify as an outside salesperson, it is clear that Plaintiff was exempt from being entitled to overtime wages as an outside salesperson as well. Accordingly, since Plaintiff was both an administrative employee and an outside salesperson, her claim for overtime wages must fail as a matter of law.

**POINT IV.**
**PLAINTIFF'S STATE LAW CLAIM FOR OVERTIME WAGES**

In addition to the reasons set forth in Point III above, Plaintiff's claims for overtime wages under New York Labor Law §191-c must fail as a matter of law because it is undisputed that there was no contract between the parties setting forth her entitlement to same.

Pursuant to Section 191-c, a plaintiff cannot assert a statutory claim for unpaid wages under the New York Labor Law if she has no contract, giving her a right to those wages. See, Zaitsev v. Salomon Bros., Inc., 60 F.3d 1001 (2d. Cir. 1995). "New York does not have a mandatory overtime law." Hornstein v. Negev Airbase Constr., 110 A.D.2d 884, 885, 488 N.Y.S.2d 435, 437 (2d Dep't 1985). Indeed, to assert any substantive claim for wages under article 6, a plaintiff must have an enforceable contractual right to those wages. *See, e.g.,* Tierney

21

v. Capricorn Investors, L.P., 189 A.D.2d 629, 632, 592 N.Y.S.2d 700, 703 (1st Dep't 1993),

*leave to appeal denied,* 81 N.Y.2d 710, 599 N.Y.S.2d 804, 616 N.E.2d 159 (1993); *accord*

Zaitsev v. Salomon Bros., 60 F.3d 1001, 1004 (2d Cir.1995); Ellis v. Provident Life & Accident

Ins. Co., 3 F.Supp.2d 399, 413 (S.D.N.Y.1998). Absent such a *contractual,* as opposed to a

statutory right, any claim under Section 190 et seq. of the Labor Law must fail. See, Tierney,

supra, 189 A.D.2d at 632, 592 N.Y.S.2d at 703.

Plaintiff sets forth no facts to suggest that there was an agreement between her and her

employer, in which she was promised overtime wages.  In fact, she admits that there were no

discussions or agreements in which she was promised overtime:

> Q.  Do you recall any discussions about the nature of your compensation at the
> interviews?
> A.  Yes.
> Q.  What do you recall being said about that?
> A.  I was told that it was a $75,000 base plus commission, and he said bonuses,
> occasional bonuses if they came up.

See Exh. "H", page 34:15-34:23.

> Q.  Immediately after you were hired in connection with your application for the position
> and your decision to accept the position, did you have any discussions with anyone other
> than Doug Gollan about the terms and conditions of your employment?
> A.  No.
> Q.  In any of your discussions with Doug Gollan about the terms and conditions of your
> employment, did you discuss overtime compensation?
> A.  No.

See Exh. "I", pages 282:21-283:7.

Since it is undisputed that Plaintiff has no contractual claim to overtime, her state law

claim for overtime must fail as a matter of law.  Further, as set forth more fully above, Plaintiff

was not entitled to overtime since she was an administrative employee and outside salesperson,

as defined by the FLSA.

Accordingly, for all of the foregoing reasons, Plaintiff's state law claim for overtime must be dismissed.

## POINT V.
### PLAINTIFF'S CLAIM FOR UNPAID COMMISSIONS IS UNSUPPORTED BY THE UNDISPUTED FACTS

Plaintiff asserts a claim for unpaid commissions in violation of Section 191-c of the New York Labor Law, in which she alleges that "Defendants Universal and Horizon have willfully withheld earned commissions due Plaintiff..." See Exh. "D", ¶55.

Section 191-a(b) defines an earned commission as follows:

"Earned commissions" means a commission due for services or merchandise which is due according to the terms of an applicable contract or, when there is no applicable contractual provision, a commission due for merchandise which has actually been delivered to, accepted by, and <u>paid for by the customer</u>, notwithstanding that the sales representative's services may have terminated." (Emphasis added).

Plaintiff's claim for unpaid commissions is based solely upon commissions that she did not receive once she left Universal. See Exh. "D", ¶31. The unpaid commissions were for "chargebacks" for customers that did not pay for the ad space which Plaintiff sold to them. Plaintiff admitted at her deposition that the parties never discussed the issue of chargebacks so it is undisputed that there was no agreement between the parties as to when Plaintiff "earned" her commissions in the event a customer failed to pay for the ad space which Plaintiff sold.

Q: Did you ask Universal Media whether or not there would be chargebacks?
A: No, I did not.

See, Exh. "H", page 45:12-45:14.

Pursuant to the statute, in the absence of a contractual provision between the parties, a commission is earned only once the Company receives payment from the customer. See Section 191-a(b). It is undisputed that the only commissions that Plaintiff did not receive were for accounts which remain uncollected.

23

> Q: Do you have any knowledge as you sit here today whether or not any of these
> amounts were actually collected or paid?
> A: I know Regent Wall Street we never collected on, Gutsy Woman we never colleted
> on, and Swain Australia was Chapter 11, Chapter 7. We didn't collect that $30,000.

See, Exh. "L", page 45:15-45:21.

Further, Gollan testified as follows regarding the Company's procedure when there are

uncollected accounts:

> Q: Was there any procedure that there was a chargeback or a holdback for the
> employees?
> A: The way it worked with the employees is we paid them commission on any accounts
> that they had sold into that issue. Now, we then had to collect the commissions from the
> advertisers and obviously, from time to time there would be advertisers who did not pay
> and they defaulted. At the time we knew we could no longer collect the commission, we
> would charge them back against the commission that they had been paid and that would
> be debited out of a future commission check. When an employee left, because obviously
> they are no longer an employee, we would just work it through on a true-up basis; as soon
> as we collected from the company, we would pay them the commissions they had earned.
> That is the way we deal with outside reps, people not directly employed by the company.

See, Exh. "J", pages 45:20-46:15.

Since it is undisputed that Plaintiff did not earn the commissions about which she

complains, either pursuant to the statute or the Company's policy regarding the payment of

commissions, Plaintiff's claim for unpaid commissions must fail as a matter of law.

<h2 style="text-align:center">POINT VI.</h2>

<h3 style="text-align:center">LURIE, RUDERMAN, BERNSTEIN AND BLUE HORIZON WERE NOT
PLAINTIFF'S EMPLOYERS AND CAN THEREFORE NOT BE
LIABLE FOR ANY OF PLAINTIFF'S CLAIMS</h3>

In order for Lurie, Ruderman, Bernstein and Blue Horizon to be liable for Plaintiff's

asserted claims, they would have to qualify as Plaintiff's employers under the FLSA and/or New

York's Labor Law §651(6). In order to qualify as an employer, one must 1) have the power to

hire and fire the employees; 2) supervise and control the employee work schedules or conditions

of employment; 3) determine the rate and method of payment; and 4) maintain employment

records. See FLSA §3(d); Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir.

1984).  Neither Lurie, Ruderman, Bernstein nor Blue Horizon is even alleged to exercise the

level of control which is required by these statutes.  Those defendants do not hire or fire

Universal's employees, they do not supervise Universal's employees, nor do they make decisions

regarding commissions, overtime exemptions, wages, hours and policies regarding commuting.

See Wirtz v. Pure Ice Co., 322 F.2d 259, 262-263 (8th Cir. 1963) (stock ownership is insufficient

to give rise to employer status).  As such, they do not qualify as employers and cannot be liable

to Plaintiff as a matter of law.

Bernstein testified that, as Universal's Chief Financial Officer, he had no oversight or

responsibility for the hiring and firing of Universal employees.  He did not supervise or control

the employee work schedules or conditions of employment, he did not determine the rate and

method of payment, nor did he maintain employment records.  Rather, Bernstein merely oversaw

the accounting, bookkeeping and financial statements of the Company.  He was not involved in

setting any of Plaintiff's employment conditions and he had no role in any of the circumstances

surrounding Plaintiff's separation from the Company.  See, Exh. "L", pages 10:18-10:24, 12:10-

12:14, 13:12-13:20, 14:5-14:10, 17:20-18:11 and Bernstein's Affidavit.

When asked about his involvement with the terms and conditions of Plaintiff's

employment, Bernstein testified as follows:

> Q:  Are you aware of whether she [Plaintiff] worked for Universal Communications of
> Miami?
> A:  Sure, yes.
> Q:  Did you have anything to do with her being hired by the company?
> A:  No.
> Q:  Did you have any conversations with her prior to the time she was hired by the
> company?
> A: No.
> Q:  Did you have any input on the financial terms under which she was hired?
> A:  No.
> Q:  On a daily basis did you supervise her in any way?
> A:  No.
> Q:  Did you participate in any performance evaluations of her?

25

A:  No.

See, Exh. "L", pages 17:20-18:11 and Bernstein's Affidavit.

Likewise, Lurie and Ruderman do not qualify as Plaintiff's employers under the FLSA

and/or New York's Labor Law §651(6).  Neither individual supervised or determined Plaintiff's

work responsibilities and employment conditions, neither played a role in the day-to-day

operations of the Company and neither personally directed Plaintiff to perform her work at

Universal.  *Compare to*, <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) (looking at the

level of control exercised over plaintiff in determining that individuals qualified as plaintiff's

employer); <u>Chung v. New Silver Palace Restaurant</u>, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)

(Individuals were found to be employers by virtue of their "hands on" involvement with the

company's employment practices).

As Lurie testified:

Q:  What are your duties with respect to that company [Universal]?
A:  Essentially strategic.
Q:  Do you have any involvement in the day-to-day operations of the company?
A:  No.
Q:  Are you involved in hiring employees for the company?
A:  No.
Q:  Are you generally involved in firing employees for the company?
A:  No.

See, Exh. "M", page 6:14-6:25.

Q:  In this case are you aware or were you aware of Lynore Reiseck being hired to work
for Universal Communications of Miami?
A:  Yes.
Q:  How did you come about as being aware of that?
A:  Just from Douglas Gollan.
Q:  In your position, would Mr. Gollan have sought approval from you to hire an
employee such as Ms. Reiseck?
A:  No.

See, Exh. "M", page 21:18-22:4.

When asked about his involvement with Universal, Ruderman testified as follows:

26

> Q: In connection with Miss Reiseck's work performance, did you ever discuss that with Mr. Gollan?
> A: No. He ran the show.

See, Exh. "N", pages 35:25-36:4.

In fact, it is Gollan, the President of the Company, who supervised Plaintiff and the other employees of Universal. Mr. Gollan testified that he set the commissions for the position of regional director.[9] See Exh. "J", page 52:16-52:25. He also interviewed Plaintiff and ultimately decided to hire her for the position of regional director. See Exh. "J", pages 123:14-125:2 and Exh. "D", pages 32:13-36:9. Further, Plaintiff admits in her Complaint that: "Plaintiff's immediate supervisor in this position was defendant Douglas Gollan, President and Editor-in-Chief of Elite Traveler Magazine, who has the authority to act on behalf of the corporation and who, amongst other things, can and has set employee's conditions of employment, e.g. rate of pay, schedules, benefits, etc. See, Exh. "D", ¶17.

Since neither Blue Horizon[10], nor Defendants Lurie, Ruderman and Bernstein were Plaintiff's employers, they simply cannot be liable for the claims asserted by Plaintiff. They did not hire or fire Plaintiff, they did not supervise and control Plaintiff's work and they did not set her rate of payment. See, Chung, *supra.* Accordingly, Defendants' motion for summary judgment as to all claims with respect to Blue Horizon, Lurie, Ruderman and Bernstein should be granted since none of these Defendants can be liable to Plaintiff, as a matter of law.

---

[9] Plaintiff suggests in a conclusory manner that Blue Horizon was involved in setting Plaintiff's commission rate and salary. However, this is a distortion of the defendants' testimony, each of whom make it clear that Gollan set the salary and commissions and a third-party provider simply processed them. See Exh. "J", pages 61:12-61:15, 69:11-69:16.

[10] As set forth more fully below, Blue Horizon was a completely separate entity that did not hire or fire Universal employees, did not supervise or control Universal employees, did not determine their rate or method of payment, or have any other involvement in Universal's employment practices.

## POINT VII.
### BLUE HORIZON WAS NOT PLAINTIFF'S JOINT EMPLOYER
### AND THEREFORE NOT BE
### LIABLE FOR ANY OF PLAINTIFF'S CLAIMS

In order to establish that a company is a joint employer, one must show that the company

has immediate control over the employees of the plaintiff's nominal employer.  N.L.R.B. v. Solid

Waste Services, Inc., 38 F.3d 93 (2d Cir. 1994).  "Relevant factors include commonality of

hiring, firing, discipline, pay, insurance, records, and supervision ." Id.; see also, Clinton's Ditch

Co-op Co., Inc. v. N.L.R.B., 778 F.2d 132 (2d Cir. 1985);  Zheng v. Liberty Apparel Co., 355

F.3d 61, 66 (2nd Cir. 2003); Kilkenny v. Greenberg Traurig, LLP, 2006 WL 1096830 (S.D.N.Y.

2006). Here, the undisputed facts demonstrate that Blue Horizon did not function as Plaintiff's

joint employer or make any decisions regarding whether to permit Plaintiff to commute from

Florida or with respect to the payment of Plaintiff's wages or commissions.

A company that separately employs a plaintiff may be held liable under a joint employer

theory for unpaid overtime wages if it possesses sufficient control and is directly responsible for

the failure to pay statutorily required wages.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 66

(2d Cir. 2003).  However, in order to be considered a joint employer, the entity must suffer or

permit an individual to work and this requires that the entity actually functions as the

individual's employer.  Id. at 66.  As set forth in the argument point above, it is undisputed that

Blue Horizon did not hire Plaintiff to work for Universal and there are no material facts to

suggest that Blue Horizon functioned as Plaintiff's employer.  As such, assuming arguendo that

Plaintiff was entitled to overtime wages, Blue Horizon should not be held liable for the payment

of same since it is clear that it was not Plaintiff's employer.

Similarly, Plaintiff's gender discrimination claim against Blue Horizon must fail since it

was not her joint employer.  Blue Horizon cannot be held liable under New York Human Rights

Law or the New York City Administrative Code unless Plaintiff can offer evidence to show that

Blue Horizon was involved in controlling Plaintiff's hiring, firing, discipline, pay or supervision.

In Kilkenny v. Greenberg Traurig, LLP, supra, 2006 WL 1096830 (S.D.N.Y. 2006), the plaintiff

argued that he was discriminated against based on his gender when he was fired from Greenberg

Traurig and that Morgan Stanley should be held liable as his joint employer since most of the

work that he performed while working for Greenberg Traurig was for its client, Morgan Stanley.

Morgan Stanley moved to dismiss, arguing that it could not be held liable since it was not the

plaintiff's employer.

        In granting Morgan Stanley's motion, the Court held that conclusory allegations that

Morgan Stanley was involved in controlling the plaintiff's employment situation, his work

performance, his time and expense and that Morgan "directed [his] work on many occasions,"

was insufficient to demonstrate that Morgan Stanley was the plaintiff's joint employer.  The

Court noted that the plaintiff failed to provide any supported allegations that Morgan Stanley

exerted actual control over his hiring, firing, discipline, pay, or supervision and, if anything,

plaintiff's allegations suggested that Greenberg Traurig was in sole control of the terms of his

employment. Id. at 4.

        Applying the above holdings to this matter, none of the factors that New York courts

apply to determine that a company qualifies as a joint employer exist under the present

circumstances.  Plaintiff has acknowledged throughout this litigation that she was hired by

Universal, not Blue Horizon.  She does not allege that she performed any work for Blue Horizon,

nor does she allege that Blue Horizon exercised any control over her.  See Ansoumana v.

Gristede's Operating Corp., supra, 255 F.Supp. 2d 184 (S.D.N.Y. 2003).

        It is clear from the record that it was Universal that had the power to hire and fire

Plaintiff, that Universal supervised and controlled Plaintiff's work schedules and conditions of

employment, including the determination as to how and when Plaintiff was to receive

commissions and whether or not Plaintiff could continue her employment with Universal if she

chose to move to Florida and adopt a commuting lifestyle.  Id.  Accordingly, based upon the

undisputed facts, Plaintiff's Verified Amended Complaint should be dismissed as a matter of law

as to Blue Horizon since it cannot be liable to Plaintiff as her "joint employer".

## CONCLUSION

For all of the foregoing reasons and principles of law, defendants Universal

Communications of Miami, Inc, Douglas Gollan, Geoffrey Lurie, Carl Ruderman, David

Bernstein and Blue Horizon Media, Inc. respectfully request that their motion for summary

judgment be granted in all respects and Plaintiff's amended complaint be dismissed in its

entirety, together with such other, further and different relief as to the Court seems just and

proper.

Dated: New York, New York
       October 26, 2007

**KANE KESSLER, P.C.**

By: _____
         S. Reid Kahn (SRK-1458)
         Gillian Overland (GO-7300)
    Attorneys for Defendants
    1350 Avenue of the Americas
    New York, New York 10019
    (212) 541-6222

TO:   **ALAN B. PEARL & ASSOCIATES, P.C.**
      Attorneys for Plaintiff
      6800 Jericho Turnpike – Suite 218E
      Syosset, New York 11791
      (516) 921-6645

#275173.3                                 30

## AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK        )
                             ) ss.:

COUNTY OF NEW YORK   )

        I, **NELLYA DYM**, being duly sworn, say:

        I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

        On October 26, 2007, I served the within:

## NOTICE OF MOTION FOR SUMMARY JUDGMENT, AFFIDAVITS and AFFIRMATION IN SUPPORT, with EXHIBITS, STATEMENT OF UNDISPUTED FACTS and MEMORANDUM OF LAW

by sending a true copy hereof by *Federal Express* under the exclusive care and custody of federal express mail addressed to the following:

***Alan B. Pearl & Associates, P.C.***
Attorneys for Plaintiff
6800 Jericho Turnpike – Suite 218E
Syosset, New York 11791

 

**NELLYA DYM**

Sworn to before me this
26th day of October, 2006

_____
Notary Public

CARA M. BROWNELL
Notary Public, State of New York
No. 01BR6003836
Qualified in Kings County
Commission Expires March 9, 2010