```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
LYNORE REISECK,                     :
:
                Plaintiff,    :   06 Civ. 0777 (TPG)
:
    – against –               :   **OPINION**
:
UNIVERSAL COMMUNICATIONS OF         :
MIAMI, et al.,                      :
:
                Defendants.   :
:
------------------------------------x

      This case involves claims by plaintiff Lynore Reiseck that her employer discriminated against her and wrongfully withheld compensation from her. Defendants now move for summary judgment on all of plaintiff's claims. Plaintiff opposes the motion and cross-moves for partial summary judgment on some of her claims.

      Defendants' motion is granted. Plaintiff's motion is denied.

## Background

      Plaintiff has asserted claims against Universal Communications of Miami ("Universal"), her former employer, and Blue Horizon Media, the parent company of Universal. She has also asserted claims against Douglas Gollan, Universal's president; David Bernstein, Universal's Chief Financial Officer; Carl Ruderman, Universal's Chairman and majority

owner; and Geoffrey Lurie, Universal's Vice-Chairman and an officer of Blue Horizon.

Plaintiff asserts that defendants (1) discriminated against her on the basis of sex in violation of New York state and New York City law, (2) discriminated against her on the basis of her recreational activities, in violation of New York state law, (3) withheld overtime pay, in violation of the Fair Labor Standards Act ("FLSA") and New York state law, and (4) withheld commissions that she earned, in violation of New York state law. This case was initially filed in the Supreme Court, New York County. After plaintiff amended her complaint to assert a claim under the FLSA, defendants removed the action to this court.

The following facts are undisputed, except where otherwise indicated.

Reiseck was hired by Universal in September 2002 to sell advertising for Elite Traveler, a magazine distributed free of charge to its readers. Her office was in New York City, but she was responsible for a sales territory that included the Northeast and Midwest regions of the United States, Eastern Canada, and Bermuda. This position entailed meeting with and entertaining clients, and traveling to conferences. Defendant Gollan was Reiseck's immediate supervisor.

Reiseck's compensation consisted of a $75,000 salary, in addition to commissions, bonuses, and additional incentives. Her commissions were calculated according to a written commission plan, which provided

that the commission would amount to 5% to 10% of net sales, depending on the amount of the sale. In 2003, Reiseck earned about $150,000. During that time, the advertising revenue for Reiseck's sales territory increased from $600,000 to $1.1 million.

The events at issue in this litigation began in December 2003 with a conversation between Gollan and Reiseck. Gollan had heard a rumor that Reiseck was planning to move to Florida, and asked her if it was accurate. Although the parties dispute this, Reiseck states that she denied having any plans to move to Florida. However, the parties agree that Reiseck did mention that she was in a romantic relationship with a Florida resident (a fact already known to Gollan), and that they discussed the possibility that Reiseck would spend time in Florida on the weekends and then work in New York during the week. The parties also agree that Gollan did not approve of such an arrangement. Gollan states that he was concerned that commuting in this manner would interfere with the demands of Reiseck's position. He also states that he was concerned that Reiseck was planning to move to Florida permanently and would leave Universal without sufficient notice to hire a replacement.

During a meeting on January 13, 2004, Reiseck informed Gollan that she definitely intended to travel on the weekends and work in New York during the week. Gollan informed Reiseck that this activity would be incompatible with her continued work for Universal. Therefore, Gollan subsequently provided Reiseck with a "transition plan" that

provided that Reiseck would be terminated by April 2004. However, Gollan made it clear that if Reiseck chose not to travel to Florida on the weekends, she would be able to continue her employment with Universal. Reiseck did not accept this alternative. Her last day of employment was February 13, 2004, two months earlier than provided for by the transition plan.

Defendants move for summary judgment on all of plaintiff's claims. Plaintiff moves for summary judgment on her claims for overtime pay, but argues that there are triable issues of fact with regard to all of her other claims.

## Discrimination on the Basis of Sex

Plaintiff claims that defendants discriminated against her on the basis of sex, in violation of New York state and New York City law. See N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107.

The analysis of plaintiff's claims under state and local law parallels the familiar analysis used for claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000). To withstand a motion for summary judgment, plaintiff's claims must survive the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination by showing, by a preponderance of the evidence, that "(1) she is a woman; (2) she was

- 4 -

qualified for her position; (3) she was discharged; and (4) her firing occurred under circumstances giving rise to an inference of discrimination." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997). An inference of discrimination may be supported by evidence that plaintiff was treated differently from a male employee who was "similarly situated in all material respects." Id. at 64. An inference of discrimination may also be supported by an employer's comments that reflect sex stereotypes. Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 119 (2d Cir. 2004). For instance, discrimination may be shown by statements that a woman would not be committed to her work because she was also responsible for caring for children at home. Id. at 120. If plaintiff makes out a prima facie case, the burden shifts to defendants, who must articulate a "legitimate, nondiscriminatory reason" for their actions. Shumway, 118 F.3d at 63. Finally, plaintiff must demonstrate that the reason articulated by defendants was merely pretext. Id.

Reiseck offers two categories of evidence to support her claim of discrimination. She first points to two male employees who she claims were not terminated even though they commuted to work from distant states. One employee, Richard Ammon, was the publisher of a different magazine, which was owned by an affiliate of Universal but not by Universal itself. Ammon was allowed to commute to work each week from Florida. The other employee, Eric Hoopengardner, was a

salesperson in Universal's California office who was in a romantic relationship with an employee in the New York office. According to Gollan's testimony, which Reiseck does not dispute, Hoopengardner occasionally visited New York, but did not commute between New York and California on a weekly basis. These examples do not support Reiseck's claim of discrimination. Since Ammon was a more senior employee and was employed by a different company, he was not situated similarly to Reiseck. Hoopengardner's situation was also different from Reiseck's, since his visits to New York were infrequent compared to Reiseck's plan to spend every weekend in Florida.

Reiseck also makes certain other claims about Gollan that allegedly support an inference of discrimination. First, Reiseck claims that Gollan "held a preconceived notion that because she was a woman, [she] would move to Florida to be with her boyfriend." The only evidence that Reiseck relies on for this proposition is a portion of Gollan's deposition. However, that deposition testimony is that Gollan asked Reiseck whether she was moving to Florida because another Universal executive had told him that she might be doing so. That executive had been approached by a Universal employee in Florida who had learned, through a social relationship with Reiseck and her boyfriend, that they were looking for a new apartment. The employee was concerned that she might be replaced if Reiseck moved to Florida.

Reiseck states in her affidavit that "Gollan asked me to inform him if I decided to take the relationship [with her boyfriend] to the next level" and asked this question "because I was a woman." She further states in the affidavit that "Gollan assumed that taking the relationship to the next level could mean I might move to Florida" and made this assumption "because I was a woman." However, these statements appear to reflect only Reiseck's understanding of Gollan's beliefs, not anything stated by Gollan himself. Indeed, when Reiseck was deposed about her conversations with Gollan, and about the notes that she had made contemporaneously regarding the conversations, she did not refer to anything said by Gollan supporting what she states in her affidavit.

Second, Reiseck claims that Gollan made statements indicating that she was terminated because she wanted to further her romantic relationship. However, she offers no support for this claim. Even Reiseck's testimony indicates that Gollan's stated concern was that she intended to spend every weekend in Florida, not that she might move in with her boyfriend.

Third, Reiseck states that Gollan said to her that he "thought [that] if it meant losing [her] job [she] would dump the boyfriend." This statement does not reflect stereotypical beliefs. If anything, it suggests that Gollan believed that she would prioritize her work over a personal relationship—not, as Reiseck claims, that she would leave Universal and move to Florida permanently because of a romantic relationship.

Moreover, the statement appears to have merely been echoing a statement that Reiseck admits making to Gollan during their December 2003 conversation—that she would end the relationship if necessary to save her job.

Finally, Reiseck claims that Gollan informed other Universal executives that she intended to move to Florida to be with her boyfriend. However, any such statements accurately reported the substance of the conversations between Reiseck and Gollan, and were certainly justified in light of Gollan's concern that he would need to hire a replacement for her. They do not indicate that Gollan held stereotypical beliefs.

Reiseck has failed to establish a prima facie case of discrimination. Moreover, even if she had, defendants have offered two legitimate, nondiscriminatory reasons for her termination. First, Gollan was concerned that the weekly travel would interfere with Reiseck's ability to perform well in a stressful, demanding job. Second, Gollan was concerned that Reiseck was planning to move to Florida permanently, and that she would resign from Universal with little notice, leaving the company without someone to generate advertising revenue in an important market. Reiseck has offered no evidence, beyond the alleged comments by Gollan discussed above, to show that these explanations were mere pretext.

Defendants are therefore entitled to summary judgment on this claim.

## **Discrimination on the Basis of Recreational Activities**

Plaintiff claims that defendants violated a state law providing that it is unlawful to terminate an employee because of her "recreational activities outside work hours, off of the employer's premises." N.Y. Lab. Law § 201-d. The term "recreational activities" is defined to include "any lawful, leisure-time activity . . . which is generally engaged in for recreational purposes, including but not limited to sports, games, [and] hobbies." Id.

Plaintiff argues that her weekend trips to visit her boyfriend constituted leisure travel, and that leisure travel is a protected recreational activity. Defendants argue that plaintiff was not terminated because of her traveling per se, but rather because it would impact her job performance if she were to live in Florida on the weekends.

Reiseck has offered no evidence to support her theory that she was terminated because she spent her free time traveling as a leisure activity. Instead, the evidence shows that she was terminated because Gollan believed that her job performance would be impacted by the long-distance commute, and because he was concerned that she planned to leave Universal without giving the company enough time to find a replacement. This statute is therefore inapplicable to this case.

## **Withholding of Overtime Pay**

Plaintiff claims that she is entitled to overtime pay under both federal and state law. Defendants argue that plaintiff was not eligible for overtime pay under the exemptions in these laws.

Under the FLSA, employers must pay overtime to certain employees when they work more than 40 hours per week. 29 U.S.C. § 207(a). This rule does not, however, apply to employees who are defined as "exempt" from this rule, such as "administrative" employees. Id. § 213(a)(1). New York law also mandates overtime pay, but applies the same exemptions as the FLSA. N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2.

An individual is an "administrative employee" if (1) she earns more than $455 per week, (2) her primary duty is the performance of non-manual work directly related to the general business operations of the employer, and (3) her work "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. An employee's work is related to her employer's general business operations if she "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. § 541.201(a). This specifically includes work in areas such as advertising and marketing. Id. § 541.201(b). In determining whether an employee exercises

discretion and independent judgment with respect to matters of significance, a court should consider "whether the employee has authority to commit the employer in matters that have significant financial impact." Id. § 541.202(b).  Even if an employee's decisions and recommendations are reviewed by her superiors, she can still be considered to exercise discretion and independent judgment. Id. § 541.202(c).

Based on these criteria, plaintiff was an administrative employee and was therefore exempt from the entitlement to overtime pay under both the FLSA and New York law.  First, there is no dispute that she earned more than $455 per week.  Second, her work was "non-manual" and was directly related to Universal's general business operations. Although plaintiff attempts to analogize her position to that of a salesperson in a retail store, it is clear that her responsibilities were much more significant than that.  She was the key executive responsible for generating advertising revenue from the Northeast and Midwest regions of the United States, Eastern Canada, and Bermuda.  Since Elite Traveler was distributed to readers at no charge, advertising revenue was presumably critical to the publication's success.  Indeed, advertising and marketing work is specifically enumerated by the regulations as work that falls in this category.  Finally, plaintiff exercised discretion and independent judgment.  She testified that she solicited new clients, negotiated contracts with clients, and determined what rates they would

- 11 -

pay. This demonstrates that she exercised discretion and independent judgment, even though she was required to consult with Gollan about these decisions during the first months of her employment with Universal. Plaintiff was therefore not entitled to overtime pay, and defendants are entitled to summary judgment on this claim.

## **Withholding of Commissions**

New York law provides that when a "sales representative" is terminated, "all earned commissions shall be paid within five business days." N.Y. Lab. Law § 191-c(1). The term "earned commissions" is defined as "a commission due . . . according to the terms of an applicable contract or, when there is no applicable contractual provision, a commission due for merchandise which has actually been delivered to, accepted by, and paid for by the customer." Id. § 191-a(b).

Plaintiff claims that defendants have wrongfully refused to pay her the commissions that she earned while employed by Universal. Shortly after she left Universal, the company did send her a check for commissions that she had earned. However, defendants agree that they have not paid plaintiff commissions that were based on the accounts of advertisers who have not paid Universal.

Defendants contend that Universal's salespeople only <u>earned</u> commissions when their customers paid Universal for the advertising they had purchased. Nonetheless, a commission would usually be paid to a salesperson within 45 days of a magazine issue being published,

regardless of whether the advertiser had paid Universal by that point. If Universal never received payment from the advertiser, the commission for that advertiser would be deducted from a future commission check being sent to the salesperson. This was called a "chargeback." When a salesperson had been terminated, however, a chargeback was not feasible. Therefore, the usual practice in that case was to send commission checks only once Universal received payment from an advertiser.

The parties dispute (1) whether there was a contract governing this issue, and (2) whether it is true that Universal was not paid by the clients in question.

The evidence demonstrates that there was no contractual provision governing the time when plaintiff earned her commissions. Plaintiff has not produced a contract that speaks explicitly to this issue. Nonetheless, she argues that an agreement did exist that specified that commissions are due when an advertiser is billed, not when the advertiser pays Universal. First, she points to a Compensation Plan sent to her by Gollan. However, although this document specifies the amount of Reiseck's commissions, it is silent about when a commission was "due" to her. Second, she cites deposition testimony by defendant Bernstein. However, this testimony supports defendants' understanding of when commissions were earned, not plaintiff's. Third, she cites her own deposition testimony and affidavit. At most, this evidence indicates that

plaintiff never experienced a chargeback during her brief tenure with the company. It does not indicate that she had a contract with Universal barring the use of chargebacks. Therefore, even viewed in the light most favorable to plaintiff, the evidence demonstrates that no contract governed when a commission was "due" to plaintiff.

The evidence also indicates that Universal was unable to collect on the payments owed by the advertisers in question. Defendants have produced documents establishing that they sought the intervention of a collection agency for assistance with certain accounts. Plaintiff does not address this evidence at all, and instead relies on speculation that defendants may have received in-kind payments from these advertisers in lieu of cash payments. Such speculation is insufficient to raise a genuine issue of fact with regard to this issue.

Since no contractual provision specified when a commission was earned by plaintiff, the statute requires that it was due when an advertiser paid Universal. Plaintiff is therefore not entitled to commissions based on unpaid accounts, and defendants are entitled to summary judgment on this claim.

## **Conclusion**

Defendants' motion for summary judgment is granted, and the case is dismissed. Plaintiff's cross-motion for partial summary judgment is denied.

SO ORDERED.

Dated: New York, New York
       March 25, 2009

                                                        Thomas P. Griesa
                                                        U.S.D.J.

- 15 -