UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LYNORE REISECK,

                    Plaintiff,

       -against-

UNIVERSAL COMMUNICATIONS OF
MIAMI, INC., d/b/a UNIVERSAL MEDIA,
BLUE HORIZON MEDIA, INC., DOUGLAS
GOLLAN, CARL RUDERMAN, GEOFFREY
LURIE, and DAVID BERNSTEIN in their
individual and corporate capacities,

                    Defendants.

-----------------------------------------------------------------X

**Filed via ECF**
Docket No.: 06-cv-0777 (TPG)

**DEFENDANT DOUGLAS GOLLAN'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56.1**

      Defendant Douglas Gollan, by his attorney, Nicole V. Gurkin, Esq., respectfully submits this Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Rules and contends that there are no genuine issues to be tried with respect to the following facts[1]:

      1.      Defendant Douglas Gollan ("Mr. Gollan") is the President and Editor-in-Chief of *Elite Traveler* Magazine ("Elite Traveler"), ("the magazine"). (Docket Entry No. 14, par. 1).

      2.      Elite Traveler is published by Defendant Universal Communications of Miami, Inc., d/b/a Universal Media ("Universal"). (Overland Aff., ¶5, Exh. "D", ¶2).

---

[1] Defendant Douglas Mr. Gollan incorporates by reference his previous Statement of Undisputed Facts pursuant to Local Rule 56.1 dated October 26, 2007, and all supporting affidavits and exhibits. See, Docket Nos. 12, 13, 14, 15, 16, 17, 18, 19. The aforementioned documents have already been filed with the Court and are therefore not included with this submission.

3.      Mr. Gollan has been employed by Universal as the President and Editor-in-Chief of Elite Traveler since December of 2000.  (Docket Entry No. 14, par. 2).

4.      Mr. Gollan interviewed Plaintiff Lynore Reiseck ("Plaintiff") in September of 2002 for the position of Regional Sales Director at Universal.  (Docket Entry No. 14, par. 3).

5.      Plaintiff understood at this interview that the position was to sell advertising space for the magazine.  (Docket Entry No. 14, par. 72).

6.      Mr. Gollan specifically conveyed to the Plaintiff at this interview that the Regional Sales Director position was the magazine's key sales territory, covering the Northeast, Canada, Chicago, Washington D.C., and Bermuda.  (Docket Entry No. 14, par. 4).

7.      Plaintiff understood that the nature of the position described by Mr. Gollan involved meeting with clients, that the job was to secure advertising for the magazine, and there would be extensive travel and late nights.  *See* July 19, 2005, Deposition Transcript of Lynore Reiseck ("Reiseck Tr.") at 33:14-24.

8.      Plaintiff was fine with the work schedule required, and was told that she would travel extensively, that she would have to be okay with working on weekends and nights, and that she would have to be open to entertaining on evenings.  ("Reiseck Tr." at 34:4-13).

9.      Mr. Gollan offered Plaintiff the position of Regional Sales Director following the interview which she accepted a few days later.  (Overland Aff., ¶5, Exh. "D", ¶2).

2

10. Throughout the course of her employment, Plaintiff's duties as a salesperson often required travel outside of the key sales territory to solicit advertising space. *See* February 2, 2007 Deposition Transcript of Douglas Gollan ("Gollan Tr.") at 230:11-19.

11. Defendant Carl Ruderman ("Mr. Ruderman") is the Chairman and beneficial owner of Universal. (Docket Entry No. 17, par. 1-2). *See also* February 15, 2007 Deposition Transcript of Carl Ruderman ("Ruderman Tr.") at 6:23-25, 7:6-8, 10:19-25, and 11:2-4).

12. Mr. Ruderman is also the beneficial owner of Elite Traveler. ("Ruderman Tr." at 12:22-25 and 13:-7).

13. Mr. Ruderman is also the Chairman and beneficial owner of Blue Horizon Media, Inc. ("Ruderman Tr." at 15:18-23 and 11:2-4).

14. Support services such as payroll, accounting, and receptionists were shared by both Blue Horizon and Elite Traveler ("Ruderman Tr." at 17:5-25 and 18:2-12).

15. Defendant Geoffrey Lurie ("Mr. Lurie"), and Defendant David Bernstein ("Mr. Bernstein") reported to the Chairman and worked for publications owned by Mr. Ruderman, who shared utilized and shared the duties. ("Ruderman Tr." at 17:5-25 and 18:2-12).

16. Mr. Gollan was not the only person who evaluated Plaintiff's performance because Mr. Ruderman and the other defendants were involved in evaluating how Elite Traveler employees were performing, including Plaintiff. ("Ruderman Tr." at 36:15-19).

17. Mr. Gollan's decision that Plaintiff could no longer work for Universal was brought to his attention when he was informed that Plaintiff might be looking to relocate to Florida which was

outside an important territory which her position entailed.   (Docket Entry No. 14, par. 74) and ("Gollan Tr." 93:12-25).

18.     Mr. Gollan apprised defendants Mr. Ruderman, Mr. Lurie, and Mr. Bernstein that he had met with a replacement whom he was considering to fill Plaintiff's position.   ("Gollan Tr." 251:6-14).

19.     While Mr. Ruderman did not recall a discussion with Mr. Gollan about potential hires, it was his practice to review potential hires with Mr. Gollan prior to hiring.   ("Ruderman Tr." at 34:21-25 and 35:2-11).

20.     Mr. Gollan sent an email directly to Mr. Ruderman to keep him informed of what was going on regarding the possible hiring of Plaintiff's replacement.   ("Gollan Tr." at 253:3-7).

21.     Mr. Ruderman has alleged throughout this litigation that he had no involvement in the day-to-day operations of Universal or Blue Horizon.   (Docket Entry No. 17, par. 3).

22.     However, Mr. Gollan sent emails to Mr. Ruderman relating to the business operations of Universal Communications of Miami.   ("Gollan Tr." at 187:19-23).

23.     Mr. Ruderman was on his boat and out of the country a good half of the year but capable of receiving and sending work-related emails.   At the time he could have reviewed or discussed potential hires with Mr. Gollan.   ("Ruderman Tr." at 34:25 and 35:2-23).

24.     Mr. Ruderman participated in Elite Traveler sales meetings whenever he was in town and invited to come.   ("Ruderman Tr." at 36:15-19).

25.     Mr. Gollan communicated by email with Mr. Lurie through an account associated with Mr. Lurie's employment at Universal Media.   ("Gollan Tr". at 252:8-12).

4

26.     Mr. Lurie also participated in Elite Traveler sales meetings whenever he was in town and was able to come.

27.     Mr. Gollan communicated via email to Mr. Bernstein regarding the transition plan involving Plaintiff and the employee hired was to take over Plaintiff's position.  ("Gollan Tr." at 267:10-24).

28.     Mr. Gollan supervised and controlled Plaintiff's terms and conditions of employment, namely, the geographic territory in which Plaintiff would be selling advertising space for Elite Traveler.  (Docket Entry No. 14, par. 72).

29.     Mr. Gollan made clear to the Plaintiff the necessity for her to travel as part of the job, as there were multiple trade shows, conferences, and functions that took place over weekends which she was expected to attend.  ("Gollan Tr." at 56:2-21).

30.     While most of the accounts associated with Plaintiff's position centered in New York, her territory also included Bermuda, which is generally more than a day trip; overnight trips to Boston, Chicago, and Washington; trade shows in the Caribbean; and customer events which might require availability on evenings and weekends.  (Mr. Gollan Tr. at 56:12-25 and 57:2-11).

31.     Plaintiff never indicated that traveling and attending trade shows were a problem for her, and she never raised an issue about having to attend trade shows and functions during her tenure at Universal.  ("Gollan Tr." at 57:12-25 and 58:2-3).

32.     All Elite Traveler employees were required to sign attendance sheets ("Gollan Tr." to determine the whereabouts of Universal employees, whether they were in the office, away on business, or absent due to vacation, illness, or personal reasons.  (Docket Entry No. 14, par. 52).

5

33.     Mr. Gollan never explained the sign-in and sign-out procedure to employees, nor was anything given to employees that explained the sign-in and sign-out procedure. (Mr. Gollan Tr. at 276:9-25 and 277:2-7).

34.     Mr. Gollan was not even aware whether there were written procedures or written guidelines as to the execution of the attendance sheets. ("Gollan Tr." at 278:6-13).

35.     At her interview, Plaintiff and Mr. Gollan agreed she would receive a base salary of $75,000.00, plus a commission and an occasional bonus. (Docket Entry No. 14, par. 69).

36.     Plaintiff accepted that the procedure for setting commissions with respect to the Regional Sales Director position were based on what was sold in the territory the previous year and sales growth the magazine was trying to achieve in the coming year. ("Gollan Tr." at 59:16-23).

37.     Mr. Gollan did not set the commission structure independently; he discussed his possible ideas with sales directors and asked them to take a look at the numbers to see if they appeared to be correct, or if there seemed to be room for negotiations. ("Gollan Tr." at 59:19-25 and 60: 2-19).

38.     Mr. Ruderman would offer incentives to salespersons if they met a goal he had set, and, occasionally, Mr. Ruderman would also give incentives or recognition to salespersons directly in order to motivate them. ("Gollan Tr." at 84:4-21 and 87:17-24).

39.     Mr. Gollan's assistant would routinely refer newly-hired employees to key people on the internal side of Elite Traveler who individually were in charge of payroll, benefits, and commissions. ("Gollan Tr." at 276:19-25).

40.     Payroll and benefits for Elite Traveler employees were delegated to an outside third-party provider who was not affiliated with Elite Traveler. ("Gollan Tr". at 277:8-21).

41.     This third-party provider was responsible for recommending or reviewing how people got paid, and Mr. Gollan carried out these practices according to these procedures.  ("Gollan Tr." at 284:2-14).

42.     Defendant "Mr. Bernstein" is the Chief Financial Officer for Elite Traveler. ("Gollan Tr." at 182:18-20).

43.     According to Mr. Ruderman, Mr. Bernstein was familiar with the calculation of commissions for salespeople at Elite Traveler. ("Ruderman Tr." at 30:11-25 and 31:2-6).

44.     The decision to hold back Plaintiff's commissions and receivables was decided collectively by Mr. Gollan, Mr. Bernstein, and perhaps one other person whom Mr. Gollan could not recall. (Mr. Gollan Tr. at 195:9-19).

45.     Elite Traveler's standard procedure for reviewing outstanding and uncollected accounts during the relevant periods was handled by both Mr. Gollan and Mr. Bernstein, including the specific accounts handled by Plaintiff.  ("Gollan Tr." at 196:23-35 and 197:3-20).

Dated: New York, New York
       February 10, 2012

                                   **NICOLE V. GURKIN, ESQ.**

                                   Nicole V. Gurkin (NG-2443)

                                   *Attorney for Defendant Douglas Gollan*
                                   1 River Place, #2212
                                   New York, NY 10036
                                   Telephone: (917) 974-0777
                                   Facsimile: (646) 863-3829
                                   Email: NGurkin@aol.com