UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
LYNORE REISECK, :
:
　　　　　　　　　　　Plaintiff, : Docket No.: 06 cv 0777
:
　　　　-against- :
:
UNIVERSAL COMMUNICATIONS OF MIAMI, :
INC., d/b/a UNIVERSAL MEDIA, BLUE :
HORIZON MEDIA, INC., DOUGLAS GOLLAN, :
CARL RUDERMAN, GEOFFREY LURIE, and :
DAVID BERNSTEIN in their individual and :
corporate capacities, :
:
　　　　　　　　　　　Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

KANE KESSLER, P.C.
*Attorneys for Defendants*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.   PLAINTIFF FAILED TO RAISE ANY GENUINE ISSUES OF FACT DEMONSTRATING THAT BLUE HORIZON AND UNIVERSAL ARE A SINGLE INTEGRATED ENTERPRISE ............................................................... 3

II.  PLAINTIFF HAS FAILED TO RAISE A GENUINE ISSUE OF FACT DEMONSTRATING THAT EITHER RUDERMAN OR BLUE HORIZON IS AN "EMPLOYER" UNDER FLSA ............................................... 11

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Cook v. Arrowsmith Shelburne, Inc.,
    69 F.3d 1235 (2d Cir. 1995)......................................................................................1

Dewey v. PIT Telecome Netherlands, U.S., Inc.,
    101 F.3d 1392 (2d Cir. 1996)....................................................................................8

Gibson v. American Broadcasting Companies, Inc.,
    892 F.2d 1128 (2d Cir. 1989)..................................................................................11

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999)......................................................................................8

Kaur v. Royal Arcadia Palace, Inc.,
    643 F.Supp.2d 276 (E.D.N.Y. 2007) ......................................................................10

Spicer v. Pier Sixty LLC,
    269 F.R.D. 321 (S.D.N.Y. 2010) ............................................................................10

**STATUTES**

FRCP 56(3).........................................................................................................................11

Fair Labor Standards Act.........................................................................................1, 8, 11

New York Labor Law Sec. 651(6)........................................................................................1

Defendants Blue Horizon Media, Inc. ("Blue Horizon") and Carl Ruderman ("Ruderman") (collectively, the "Defendants"), submit this Reply Memorandum of Law in further support of their supplemental motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment and dismissing the amended complaint of Plaintiff Lynore Reiseck ("Plaintiff") in its entirety because it cannot be genuinely disputed that neither Blue Horizon nor Ruderman were Plaintiff's "employer" as that term is defined by the Fair Labor Standards Act and/or New York Labor Law Sec. 651(6).

## I. PLAINTIFF FAILED TO RAISE ANY GENUINE ISSUES OF FACT DEMONSTRATING THAT BLUE HORIZON AND UNIVERSAL ARE A SINGLE INTEGRATED ENTERPRISE

In opposition to Defendants' motion, Plaintiff raised no genuine issues of fact concerning any of the factors set forth by the Second Circuit to determine whether two distinct companies can be found to represent a single, integrated enterprise under the FLSA or New York's labor law. Instead, Plaintiff proffered mischaracterizations of the record, unsupported conclusions and, in some instances, statements which are squarely controverted by the record evidence.

As Defendants' noted in their moving brief, two distinct companies can be found to represent a single, integrated enterprise if there is evidence of: (1) an interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. See, Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995). The Second Circuit has held that of these factors, "the second factor is the most crucial and…under this factor, 'the critical question to be answered then is: what entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Id. Here, it is clear that Universal, and Universal alone, made the final decisions regarding

3

#352503.1

Plaintiff's employment. Plaintiff does not dispute the following facts: Gollan was her only supervisor; Gollan was an employee of Universal, not Blue Horizon; Plaintiff did not report to anyone at Blue Horizon; Plaintiff provided no services for Blue Horizon; Gollan alone hired Plaintiff; Gollan alone set the terms and conditions of Plaintiff's employment, including her schedule, sales territory, hours and compensation; and Gollan alone reviewed Plaintiff's performance. (See, Gollan Tr. pp. 52; 123-125).[1]

Unable to refute these facts, Plaintiff nonetheless claims that Blue Horizon and Universal operated as a "single enterprise" with regard to Plaintiff because Ruderman, Lurie and Bernstein, all of whom had management positions for both Blue Horizon and Universal, were "involved in the decision to terminate Plaintiff's employment." (Plaintiff's Brief at 6). However, ***none*** of the deposition testimony cited by Plaintiff lends any support to this allegation. Plaintiff repeatedly misstates the deposition testimony throughout both her brief and her counterstatement of facts. The transcript references she cites either do not support her characterizations or worse, in several instances, squarely contradict them. For example, the following testimony negates any claim that the above individuals were involved in matters concerning Plaintiff's employment or the decision to transition her from Universal.

**Gollan Deposition**

With regard to Gollan's requirement that Plaintiff not commute from Florida as a condition of her continued employment, Gollan testified:

---

[1] A true and complete copy of the transcripts of the depositions of the defendants, Douglas Gollan, Carl Ruderman, Geoffrey Laurie and David Bernstein were annexed to the Affirmation of Gina Ianne Graff, dated March 23, 2012 and previously filed with the Court in opposition to the present motion.

4

#352503.1

| | |
|---|---|
| Q. | Do you recall discussing with Mr. Lurie that issue [transitioning Plaintiff from Universal]? |
| A. | I don't. |
| Q. | Do you recall discussing with Mr. Ruderman that issue? |
| A. | I don't recollect the contents of any discussion. |
| Q. | How about Mr. Bernstein, do you recall discussing this issue with Mr. Bernstein? |
| A. | I don't recollect whether or not we had a discussion or the contents of the discussion. |
| Q. | Can we say the decision to condition her continued employment on that requirement that we discussed before is your decision; that's your decision to be made? |
| A. | That's my decision. |

(Gollan Tr. at pp. 302-304)

**Lurie Deposition**

| | |
|---|---|
| Q. | [With regard to Universal], do you have involvement in the day-to-day operations of the company? |
| A. | No. |
| Q. | Are you involved in hiring employees for the company? |
| A. | No. |
| Q. | Are you generally involved in firing employees for the company? |
| A. | No. |

(Lurie Tr. at pp. 5-6)

| | |
|---|---|
| Q. | In your position, would Mr. Gollan have sought approval from you to hire an employee such as Ms. Reiseck? |
| A. | No. |
| Q. | Would you have been required or would it have been required for Mr. Gollan to have reviewed the financial aspects of that? In other words, that the salary was, what the commission was? |
| A. | Reviewed? |
| Q. | With you for approval? |
| A. | No. |

(Lurie Tr. at pp. 21-22)

| | |
|---|---|
| Q. | Do you have any personal knowledge of her specific duties or how she actually was told to go about getting sales? |
| A. | No. |
| Q. | Did you meet with Ms. Reiseck before she was hired? |

5

#352503.1

> A. No.
> Q. In connection with her work at the company, were you involved in reviewing her performance?
> A. No.
> Q. Who was the person who would do that?
> A. Mr. Gollan.
> Q. Do you recall speaking to Mr. Gollan about the performance of Ms. Reiseck?
> A. No.

(Lurie Tr. at pp. 23-24)

With regard to Plaintiff's separation from Universal, Lurie testified:

> Q. Was Mr. Gollan discussing what had already happened with you, or was he seeking your advice and your approval on what he wanted to do?
> A. I'll answer the second part first. He was not seeking my advice or approval. The conversation that I alluded to about what was said and what was happening I don't believe was one conversation. I believe that there was more than one conversation over some period of time of which I don't recall, and that he was informing me of what was happening, certainly not seeking my approval.

(Lurie Tr. at pp. 25-27)

**Bernstein Deposition**

> Q. Are you aware of whether [Plaintiff] worked for Universal Communications of Miami?
> A. Sure, yes.
> Q. Did you have anything to do with her being hired by the company?
> A. No.
> Q. Did you have any conversations with her prior to the time she was hired by the company?
> A. No.
> Q. Did you have any input on the financial terms under which she was hired?
> A. No.
> Q. On a daily basis did you supervise her in any way?
> A. No.
> Q. Did you participate in any performance evaluations of her?
> A. No.

(Bernstein Tr. at p. 33)

6

#352503.1

Q.   So, do you have any knowledge, yourself, about the circumstances of Ms. Reiseck's last day?
A.   No. I was just informed of it.

(Bernstein Tr. at p. 50)

Q.   Can you recall any discussion with Mr. Gollan about Ms. Reiseck's leaving prior to him telling you that she's actually leaving? As you testified, he informed you she was leaving. Do you recall anything before that in which the issue of her leaving was raised with you or Mr. Gollan?
A.   I have no recollection of that at all.
Q.   So, it's your understanding that the decision for her to leave was between herself and Mr. Gollan?
A.   Correct.
Q.   Certainly not you.
A.   Correct.

(Bernstein Tr. at p. 43)

**Ruderman Deposition**

Q.   Do you sir, recall discussing the hiring of [Plaintiff] prior to the time she was hired with anybody?
A.   No, sir.
Q.   In connection with Ms. Reiseck's work performance, did you ever discuss that with Mr. Gollan?
A.   No. He ran the show.
Q.   Well, would it have been your practice, at the time in connection with Elite Traveler, to have reviewed the evaluation that Mr. Gollan was giving to some salespeople?
A.   Not really. He ran the show.
Q.   Do you recall having any conversations with anybody at Elite Traveler in which the work performance of Miss Reiseck was discussed with you?
A.   No, sir.

(Ruderman Tr. at pp. 34-39)[2]

---

[2] This testimony also refutes Gollan's unsupported allegation that "Mr. Ruderman and the other defendants were involved in evaluating how Elite Traveler employees were performing, including Plaintiff." (See, Gollan Rule 56.1 Statement of Undisputed Facts submitted on February 10, 2012 at par. 16). The testimony referenced by Gollan in support of his statement has nothing to do with Ruderman evaluating employee performance: Q: Well, in your role at Elite Traveler, do you recall participating at sales meetings? A. Once in a while, I did. If I was in town, they invited me to come. (Ruderman Tr. at 36:15-19). The testimony cited

7

#352503.1

> Q. Do you recall discussing with Mr. Gollan, at any time, the termination or the transition of Miss. Reiseck from employment?
> A. I don't recall. I don't recall.[3]
> Q. Do you understand that [Gollan] had the responsibility to make the decision to terminate [Plaintiff's] services?
> A. Absolutely right.
> Q. As you sit here today, do you recall participating in the decision to terminate her?
> A. Participating, me?
> Q. Yes.
> A. No, I don't recall.

(Ruderman Tr. at pp. 45-46)

By reason of the above testimony, with regard to the critical inquiry as to which entity made the final decisions regarding employment matters for Plaintiff, the answer is indisputably Universal and not Defendants.

With regard to the remaining factors considered upon a "single enterprise" analysis, Plaintiff again completely mischaracterizes, and in some instances, simply invents, the record evidence. For example, as noted above, there is no centralized control of labor relations between Blue Horizon and Universal, including, "tasks such as handling job applications, approving personnel reports and exercising veto power over major employment decisions." (Plaintiff's Brief at p. 4), citing, Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000). Gollan, acting solely on behalf of Universal, was in charge of all hiring, firing and conditions and terms of employment for all Universal employees, including Plaintiff. Yet Plaintiff

---

above also refutes Gollan's additional allegation that it was Ruderman's practice to review potential hires with Mr. Gollan prior to hiring." (See, Gollan Rule 56.1 Statement of Undisputed Facts submitted on February 10, 2012 at par. 19). Again, the testimony referenced by Gollan in support of this statement also lends absolutely no support to such statement: Q: Would it have been your practice, at the time, that Mr. Gollan would review potential hires with you prior to being hired? A: Just for the record, I – I was out of the country a good half a year on my boat. So a lot of things were done when I wasn't there. When I was there, he could have discussed things here or there. I certainly don't recall that though. (Ruderman Tr. at 34-35).
[3] Nor did Ruderman recall any conversations concerning Plaintiff's departure with Lurie or Bernstein (Ruderman Tr. at p. 43).

8

continues to attempt to conjure a shared human resources department between Universal and Blue Horizon where none exists. The following deposition testimony makes clear that Blue Horizon merely provided "back-office support" to Universal for such ministerial items as a shared receptionist and payroll processing, not "centralized control of labor relations" or setting of policies and amounts for compensation.

**Bernstein Deposition**

> Q. Do you have any responsibility for the human resources function at the company?
> A. We don't have a human resource function per se. The – we do payroll and administer medical plans.

(pp. 10-11)

> Q. Is there anybody [at Blue Horizon] coordinating the hiring and firing practices of [Universal]?
> A. No. No.

(p. 16)

**Lurie Deposition**

> Q. I would say is there any procedures with respect to the hiring of employees?
> A. Each company has its own procedures.

(p. 13)

> Q. There's reference here to "Return to human resources" and a human resources signature by the Donna woman. Does that refresh your recollection that she was involved in human resources for the companies?
> A. I repeat again, it all depends on the definition of human resources. I believe this person was the payroll clerk. Human resources, as you described it earlier on about determining the practices, participating in hiring and firing is not done through any single department in the company. It's just really payroll administration.
> Q. With respect to payroll practices at the company, in other words, how employees are paid, whether they're paid overtime, salary, how commissions are calculated, was there any person that you're aware of responsible for determining those practices at [Blue Horizon]?

9

> A. I believe each company participated in negotiations of what the terms of the employment were separately, but each company.

(pp. 16-17).

> Q. Now, in connection with the development of compensation or commission plans for Universal Communications of Miami, is that an activity that you would review with Mr. Gollan?
> A. No.

(p. 25)

In addition to the foregoing, and contrary to Plaintiff's representations, Blue Horizon and Universal do not share office space or equipment. They each occupy separate space, on separate floors, of the same building. Also contrary to Plaintiff's characterization that "no money changes hands for the services provided to Universal by Blue Horizon", there is an allocation made for the shared receptionist, mail services and payroll administration services provided. There is no evidence of shared bank accounts or shared personnel policies between Blue Horizon and Universal. Nor is there evidence of shared day-to-day management. It is undisputed that Gollan oversaw the daily operations of Universal, and the fact that Blue Horizon and Universal are both in the publishing industry is wholly irrelevant.

The only undisputed fact weighing in Plaintiff's favor is that there is common ownership between Universal and Blue Horizon. However, this fact "does not establish that [Blue Horizon] exercises control of the day-to-day operations of [Universal]," and the Second Circuit has clearly established that "common ownership, standing alone, is insufficient to establish that the two companies are a single employer." <u>Dewey v. PIT Telecome Netherlands, U.S., Inc.</u>, 101 F.3d

10

1392, 1393 (2d Cir. 1996).[4] Despite Plaintiff's dubious misrepresentations, the actual evidence negates any inference that Universal and Blue Horizon are a single, integrated entity and, thus, Defendants' motion to for summary judgment should be granted.

II.  **PLAINTIFF HAS FAILED TO RAISE A GENUINE ISSUE OF FACT DEMONSTRATING THAT EITHER RUDERMAN OR BLUE HORIZON IS AN "EMPLOYER" UNDER FLSA**

Plaintiff correctly asserts that the determination of whether an individual or entity is an "employer" under FLSA and New York's labor law is a factual inquiry, centered upon whether the alleged employer in question exercised sufficient control over the particular employee in question. See, Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). However, in lieu of presenting any genuine issue of material fact with regard to this issue, Plaintiff persists in her pattern of misrepresentations concerning the testimony and evidence. In support of their motion, Defendants proffered numerous facts demonstrating that neither Ruderman nor Blue Horizon exercised sufficient formal or functional control over Plaintiff to be considered her employer: Defendants were not involved in the decision to hire Plaintiff; Defendants were not involved in the decision concerning Plaintiff's separation from Universal; Defendants did not supervise Plaintiff or evaluate her job performance; Defendants did not set the conditions of Plaintiff's employment, including her salary, compensation, hours, sales territory or schedule; Defendants had no involvement in the day-to-day operations of Universal; Universal's offices

---

[4] Plaintiff's efforts to distinguish Dewey are unpersuasive. As indicated, Defendants cited Dewey for the proposition that common ownership is not sufficient to find that two companies operate as a single employer in the absence of other indicia. Here, as in Dewey, there is no other indicia that Blue Horizon and Universal can be construed as a single employer, such as common offices, equipment, bank accounts, personnel policies and day-to-day management.

11

were in a separate location from Blue Horizon's; and Plaintiff never performed any services for Blue Horizon. (See Deposition testimony cited in Point I, above).

Without refuting the above facts, Plaintiff opposes Defendants' motion based on the following two allegations: (1) "Defendant Gollan stated at his deposition that he *would have* consulted with Lurie, Bernstein, and Ruderman before making a decision and implementing it concerning Plaintiff's employment (Gollan Tr. at 304-305); and (2) Defendant Gollan sent an email to Ruderman regarding Plaintiff's transition plan. (Plaintiff's Brief at p. 9) (Emphasis added). With regard to the first allegation, Gollan's testimony about what he "would have done" but did not (and was not required to) do, is irrelevant and raises no genuine issue of material fact necessary to defeat Defendants' motion. Moreover, it is abundantly clear that Gollan did not seek anyone's approval before "making a decision and implementing it concerning Plaintiff's employment," nor was he required to seek approval. The testimony that every witness gave, including Gollan was that he made the decisions concerning Plaintiff's employment including the transition plan out of Universal on his own. With regard to the second allegation, that Gollan sent an email to Ruderman regarding Plaintiff's transition plan is similarly irrelevant. This "fact" does not indicate that Defendants had any input regarding the transition or that he either reviewed it or approved it before it was presented to Plaintiff. Indeed, Plaintiff conspicuously failed to mention that this email was sent to Ruderman *after* the decision to transition Plaintiff was made, and in no way solicited Ruderman's approval either before or after.

Unable to proffer any facts that Defendants exercised control of Plaintiff's employment, Plaintiff next resorts to arguing that Defendants exercised control over the operation of Universal in general and should therefore be construed as Plaintiff's employer. In support of this

argument, Plaintiff alleges that Defendants "had the authority to hire and fire Universal employees" and were "significantly active in the company's affairs." (Plaintiff's Brief at p. 10). However, these conclusory and self-serving statements are nowhere supported by the record. The deposition testimony cited in Point I above, clearly demonstrates that Defendants were not involved in the daily operations of Universal and were not involved in any way in the hiring or firing of any Universal employees. Ruderman's testimony that when he was in town, he occasionally sat in on sales meetings, chatted with employees who he happened to see, and gave out gifts from time to time is hardly evidence of either formal or functional control, let alone evidence that Defendants were "significantly active in the company's affairs," necessary to impute employer liability to Defendants.

The cases cited by Plaintiff are also inapposite. In Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (S.D.N.Y. 2010), the court based its decision to deny defendant's motion for summary judgment on the facts that defendant decided to impose a service charge, helped design the company's service policies, played a leading role in the hiring of employees and directed the transfer of two employees from a related company. None of these facts indicating functional control exist here. Similarly, in Kaur v. Royal Arcadia Palace, Inc., 643 F.Supp.2d 276 (E.D.N.Y. 2007), a question of fact existed concerning whether the putative employer told employees, including the plaintiff, that he was their manager and that "whatever he said had to be followed." Here, it is not even alleged that Ruderman, nor anyone at Blue Horizon made such statements.

While on a motion for summary judgment, the moving party has the burden of establishing that there are no genuine issues of material fact requiring trial, the non-moving party

#352503.1

must present sufficient, specific facts showing that a genuine and material issue of fact remains. Mere conclusory allegations, or in this case, allegations that are directly controverted by the record evidence, will not suffice to survive summary judgment. FRCP 56(3). Gibson v. American Broadcasting Companies, Inc., 892 F.2d 1128 (2d Cir. 1989). Here, there is no genuine issue of material fact concerning whether Blue Horizon and/or Ruderman are employers under the FLSA and New York's Labor Law and, therefore, their motion for summary judgment should be granted.

## CONCLUSION

For all of the foregoing reasons and principles of law, as well as those set forth in Defendants' previous submissions, defendants Carl Ruderman and Blue Horizon Media, Inc. respectfully request that their motion for summary judgment dismissing Plaintiff's remaining claims be granted in all respects, together with such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
April 13, 2012

              KANE KESSLER, P.C.

              By: _____
                S. Reid Kahn (SRK-1458)
                Dana Susman (DMS-5436)

              *Attorneys for Defendants*
              *Carl Ruderman and Blue Horizon*
              *Media, Inc.*
              1350 Avenue of the Americas
              New York, New York 10019
              (212) 541-6222

#352503.1