UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
LYNORE REISECK,                                 :
                                                :
                        Plaintiff,              :    06 Civ. 0777 (TPG)
                                                :
        – against –                             :    **OPINION**
                                                :
UNIVERSAL COMMUNICATIONS OF                     :
MIAMI, et al.,                                  :
                                                :
                        Defendants.             :
                                                :
------------------------------------------------x

      Plaintiff Lynore Reiseck claims that her employer, Universal Communications of Miami, Inc. ("Universal"), and several co-defendants wrongfully withheld compensation from her. Before the court are motions for summary judgment from defendants Blue Horizon Media, Inc., Carl Ruderman, Geoffrey Lurie, and David Bernstein. These motions solely concern the question of whether these defendants qualify as employers of plaintiff for purposes of the Fair Labor Standards Act and state law. Defendant Douglas Gollan has also submitted a motion for summary judgment, in which he argues that plaintiff falls under the "outside salesperson" exemption to the FLSA and is thus not entitled to overtime compensation.

      The motions of defendants Bernstein and Lurie are granted. All other motions are denied.

**Background**

In September 2002, Universal hired Reiseck as a Regional Director of Sales in its New York City office. In this capacity, Reiseck was responsible for selling advertising in the northeastern United States and Canada for Elite Traveler, a magazine published by Universal. Advertising sales make up the majority of Universal's revenue from Elite Traveler, because Universal distributes the magazine to readers free of charge.

As compensation for her advertising sales work, Universal paid Reiseck a $75,000 salary plus commissions, bonuses, and additional incentives. Her commissions were calculated according to a written plan, which provided that the commission would amount to 5% to 10% of net sales, depending on the amount of the sale. In 2003, plaintiff earned about $150,000. Universal did not, however, provide her with any overtime compensation.

Reiseck left Universal in February 2004, following a dispute with her employers over her plan to reside in Florida on weekends. In May 2004, she filed a lawsuit in his court against defendants Universal; Blue Horizon, Universal's parent company; Douglas Gollan, her supervisor at Universal; Carl Ruderman, Universal's Chairman and majority owner; Geoffrey Lurie, Universal's Vice-Chairman and an officer of Blue Horizon; and David Bernstein, Universal's Chief Financial Officer. Reiseck alleged that defendants discriminated against her based on sex and recreational activities in violation of New York state and city law, withheld overtime pay in violation of the FLSA

and New York state law, and withheld commissions in violation of New York state law.

After the completion of discovery, Defendants moved for summary judgment on all of Reiseck's claims.  Reiseck cross-moved for partial summary judgment on her overtime claims.  This court granted Defendants' motion for summary judgment and denied Reiseck's cross-motion for partial summary judgment.

With regard to Reiseck's overtime claims, this court held that she fell within the "administrative employee" exemption to the FLSA and New York law.[1]  Reiseck v. Universal Commc'ns of Miami, No. 06 Civ. 0777, 2009 WL 812258, at *4-5 (S.D.N.Y. Mar. 26, 2009), vacated in part and remanded, 591 F.3d 101, 104 108 (2d Cir. 2010) (citing 29 U.S.C. § 213(a)(1)).  On January 11, 2010, the Court of Appeals for the Second Circuit held that this court erred in finding that Reiseck fell within this administrative employee exemption.  Reiseck, 591 F.3d at 108.  The Second Circuit held that Reiseck was not an administrative employee, because, according to the Secretary of Labor's interpretive regulations, she was a salesperson.

Accordingly, the Second Circuit vacated this court's judgment insofar as it granted summary judgment for Defendants on the issue of overtime pay under the FLSA and New York law.  Id.  The Second Circuit then remanded the case to this court to consider Defendants' other arguments that Reiseck is exempt from the overtime pay provisions, namely that she was an "outside

---

[1] New York law applies the same exemptions as the FLSA.  Compare 29 U.S.C. § 270, with N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2.

3

salesperson" pursuant to 29 U.S.C. § 213(a)(1), or a "commissioned salesperson" pursuant to 29 U.S.C. § 207(i).  Id.

On May 18, 2011, this court granted plaintiff summary judgment with regard to the "commissioned salesperson" exemption. See Reiseck v. Universal Commc'ns of Miami, No. 06 Civ. 0777, 2011 U.S. Dist. LEXIS 54276, at *2 (S.D.N.Y. May 18, 2011). The court held that the exemption was not applicable because "Universal was not a retail or service establishment." Id. The court, however, withheld summary judgment with regard to the "outside salesperson" exemption, because contested issues of material fact precluded the court from ascertaining the applicability of the exemption. See id. at *1-2.

## The Present Motions

Defendants Blue Horizon, Ruderman, Bernstein, and Lurie sought leave to renew the argument that they are not employers under the FLSA or state law and so cannot be held liable for failing to pay any overtime due to plaintiff. Leave was granted, and defendants now move for summary judgment on this issue.

Defendant Gollan has also submitted a summary judgment motion attempting to relitigate the court's decision to deny summary judgment as to the applicability of the "outside salesperson" exemption. The court has already decided that issue and will not do so again. Gollan's motion is denied. The following discussion concerns only the motions of Blue Horizon, Ruderman, Bernstein, and Lurie.

**Discussion**

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In assessing a summary judgment motion, the court must draw all justifiable inferences in favor of the non-movant. Id. at 255.

To survive summary judgment, however, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 11 (1986). Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Further, the "mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

The Definition of "Employer" in the FLSA

To be held liable under the FLSA, a person must be an "employer," which § 3(d) of the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[2] The

---

[2] Courts use the same definition for "employer" for both New York state labor law and FLSA claims. See Chu Chung v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 319 (S.D.N.Y. 2003). Thus the court addresses the state law and FLSA claims in tandem.

5

Second Circuit has held that this language is to be interpreted broadly to expand the scope of the FLSA's protections to the greatest possible extent. See Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984).

Courts asked to determine whether a particular individual is an "employer" look to the power the individual possessed over the worker in question with an eye to the economic reality presented by the facts of each case. See Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999). The so-called "economic reality" test has developed to facilitate this inquiry. In applying this test, the court is to ask "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter, 735 F.2d at 12 (internal quotation omitted). No single factor is determinative, and the factors are not exhaustive. Rather, the court is to look to the totality of the circumstances and assess all relevant evidence bearing on the critical question of the degree of control of the alleged employer over the worker. Herman, 172 F.3d at 139.

Furthermore, an alleged employer need not constantly exercise such control. "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA...." Id. Officers and owners that do not directly supervise workers may nonetheless be deemed employers under the FLSA where "the individual has overall operational control of the corporation, possesses an ownership interest in it,

6

controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003)

Given the extensive and fact-intensive nature of the inquiries just detailed, it is perhaps unsurprising that this question is rarely amenable to summary judgment. Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 143-44 (2d Cir. 2008). However, when the facts of the case unambiguously indicate that a given individual does not exercise meaningful control over the plaintiff-worker, a court may find that the individual is not an employer on summary judgment. See, e.g., Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 309-311 (S.D.N.Y. 2011) (holding that an owner and sole shareholder of a defendant company is not also an employer due to her lack of operational control over the day-to-day business of the company).

The court begins its analysis with corporate defendant Blue Horizons, as its motions raises issues of fact and law that are distinct from those raised by the individual defendants.

Blue Horizon

Defendant Blue Horizon argues that it was not plaintiff's "employer" because she was employed by a different entity, Universal, and Blue Horizon exercised no functional control over plaintiff. Plaintiff counters that Blue Horizon and Universal constitute a single employer under the FLSA, since the two companies, while superficially distinct, are in fact an integrated enterprise.

"Under the doctrine of limited liability, a parent is liable for the acts of its

subsidiary only under extraordinary circumstances. The doctrine therefore creates a strong presumption that a parent is not the employer of its subsidiary's employees." Balut v. Loral Elec. Sys., 988 F. Supp. 339, 344 (S.D.N.Y. 1997) (internal quotations and citations omitted). To overcome this presumption and "prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an integrated enterprise with the employer, thus making one liable for the illegal acts of the other." Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000).

Four factors are relevant to this inquiry:  "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Cook v. Arrowsmith Shelburne, Inv., 69 F.3d 1235, 1240 (2d Cir. 1995). "Although no one factor is determinative…and, indeed, all four factors are not required,…control of labor relations is the central concern…." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (internal citations omitted). "That criterion has been distilled further into the following question: 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Duffy v. Drake Beam Morin, No. 96 Civ. 5606, 1998 U.S. Dist. LEXIS 7215, at *11-12 (S.D.N.Y. May 15, 1998). "With respect to interrelation of operations…courts consider whether the parent was involved directly in the subsidiary's daily business decisions; whether the two entities shared employees, services, records, or equipment; and whether the entities commingled assets or finances

8

to any extent." Ennis v. Tyco Int'l Ltd., No. 02 Civ. 9070, 2004 U.S. Dist. LEXIS 4329, at *11 (S.D.N.Y. Mar. 18, 2004). "[C]ommon management and common ownership, "are less important as they represent ordinary aspects of the parent-subsidiary relationship" and "'the mere existence of common management and ownership [is] not sufficient to justify treating a parent corporation and its subsidiary as a single employer.'" Schade v. Coty, Inc., No. 00 Civ. 1568, 2001 U.S. Dist. LEXIS 8440, at *29-30 (S.D.N.Y. June 20, 2001). Lastly, it is particularly hard for a plaintiff to prove that a party acted as her employer "where, as here, the plaintiff attempts to show not that a subsidiary is integrated with its parent, but rather, that several seemingly independent corporations should be considered as one." Regan v. In the Heat of the Nite, Inc., No. 93 Civ. 862, 1995 U.S. Dist. LEXIS 9682, at *6 (S.D.N.Y. July 12, 1995)

It is undisputed that Ruderman owns both Universal and Blue Horizon, and that the upper management of both companies is largely identical. Moreover, both companies have their offices in the same building. Indeed, Blue Horizon leases the space that Universal occupies, and Universal occupies that space pursuant to an informal arrangement rather than a formal sublease. Blue Horizon also manages the payroll for Universal, sorts and delivers mail for Universal, and provides other forms of administrative support to Universal. Furthermore, during the time period at issue, many officers of Blue Horizon simultaneously served as officers of Universal, including defendants Bernstein and Lurie. Lastly Bernstein has testified that Universal personnel files are

9

maintained in Blue Horizon's offices. These facts are sufficient to deny Blue Horizon's motion for summary judgment. See Regan, 1995 U.S. Dist. LEXIS 9682, at *9-10 (denying summary judgment as to defendant companies alleged to constitute an integrated enterprise, due to the 1) overlap of employees between the companies; 2) their shared maintenance of employee records; and 3) domination of the companies by their common owner and principle shareholder).

There remain issues for trial concerning the degree of interrelationship of the companies and the degree of centralization of labor relations between the companies. For example, Gollon, plaintiff's immediate supervisor and the central actor in the events giving rise to this suit, was employed by Universal alone and indisputably exercised the most authority over employment decisions at Universal. All told, it appears that Universal exercised considerable independent control over its daily affairs and hiring practices, but that many other aspects of its operations—including its payroll and personnel administration—were undertaken by Blue Horizons. A reasonable jury could find that the considerable integration of the two companies casts doubt on Universal's alleged independence, so Blue Horizon's motion for summary judgment is denied.

Ruderman

Defendant Carl Ruderman owns Universal and Blue Horizon and serves as the chairman of the publication for which plaintiff worked. Defendant Gollan reports to Ruderman, but the evidence establishes that Ruderman delegates

broad authority to Gollan to run the daily affairs of Universal. Indeed, during the period in dispute, Ruderman spent a sizeable percentage of the year on his boat.

But Ruderman oversees certain aspects of the business at Universal. He testified that he pays close attention to the bottom-line profit of the company, which is driven largely by advertising revenue generated by salespeople like plaintiff. He also testified that he knows about the standard compensation and commissions packages offered to salespeople. He further testified that when he visits the New York offices of his companies, he often drops by Universal's offices to discuss the state of business with salespeople. He also has a practice of giving bonuses to high-performing salespeople. In fact, the evidence establishes that in 2003, Ruderman gave plaintiff a watch for her efforts.

Thus it appears that Ruderman has ultimate managerial authority over Universal and that he exercised this authority over plaintiff directly but sporadically. Factual issues exist as to whether defendant maintained sufficient control over plaintiff to qualify as her employer under the FLSA. Accordingly, Ruderman's motion for summary judgment is denied.

Bernstein

Defendant Bernstein is the Chief Financial Officer of both Blue Horizon and Universal. The evidence establishes that he heads the accounting department that manages the financial affairs and payroll of the various companies owned by defendant Ruderman. In this capacity, Bernstein manages a staff that processes payroll, calculates commissions due to

11

salespeople like plaintiff, secures the benefits' packages for company employees and maintains company personnel files.

The evidence does not establish that Bernstein was instrumental in the decision to hire plaintiff or in establishing the terms of her compensation. Nor does it appear that Bernstein exercised any day-to-day control over plaintiff. Rather, the evidence suggests that Bernstein was a financial administrator with no operational control over plaintiff.

Plaintiff argues that material issues of fact exist as to whether Bernstein is an "employer" under the broad definition of that term found in the FLSA. First, plaintiff notes that the department headed by Bernstein was responsible for calculating the commissions due to plaintiff. In this capacity, Bernstein and his staff communicated directly with plaintiff regarding the amount of her commissions. Gollan testified in deposition that he may even have had a personal meeting with Bernstein regarding the amount of commissions due to plaintiff after her departure. These commissions comprised a sizeable percentage of plaintiff's total compensation. There is no evidence, however, that this role afforded Bernstein any meaningful control over the terms of plaintiff's compensation. Rather, the evidence establishes that Bernstein and his department paid out commissions in accordance with the terms established by Gollan. In short, Bernstein merely processed the payments due to plaintiff. This is insufficient to establish that Bernstein was an employer under the FLSA.

Plaintiff, however, argues that there exist triable issues regarding extent

of Bernstein's involvement in plaintiff's hiring and firing. While Gollan was primarily responsible for the decisions to hire and fire plaintiff, he testified that he "probably" had discussions with co-workers about plaintiff's hiring, though he could only specifically recall discussing the matter with a non-party individual. Gollan further testified that the co-workers he "would have talked to potentially" regarding the termination of plaintiff included Bernstein. Standing alone, this testimony is clearly insufficient to counter Bernstein's unequivocal denial of a personal role in plaintiff's hiring and firing. Gollan also attested to a document containing a "transitional plan" to govern the final days of plaintiff's employment. Gollan states that he recognized Bernstein's handwritten initials on this document. This evidence establishes that Bernstein was aware that plaintiff was leaving Universal. It does not, however, establish that Bernstein influenced the transitional plan. Indeed, it suggests that Bernstein was notified of the plan after it was made.

In summary, it is clear beyond any real question that Bernstein is entitled to summary judgment.

Lurie

During the period in dispute, defendant Geoffrey Lurie served as the vice chairman of both Universal and Blue Horizon.[3] Lurie testified that his role in the companies was "essentially strategic" and that he had no input on the daily affairs of Universal or the hiring practices of the company, other than the hiring of senior management employees. The evidence establishes that Lurie

---

[3] Lurie left the companies in 2009.

knew that plaintiff was hired and that he learned that she would leave Universal. In addition, Lurie testified to have conversations with Gollan in "general terms" about the performance of salespeople. This appears to be the extent of Lurie's involvement with plaintiff.

Plaintiff introduces no evidence to suggest that Lurie exerted any direct control over her. Indeed, it is unclear whether Lurie interacted with plaintiff at all. Instead, plaintiff points to Lurie's senior role in the company and the bare possibility that Gollan may have sought Lurie's input before hiring and firing plaintiff. Plaintiff's conjecture is insufficient to defeat Lurie's unequivocal testimony. Accordingly, Lurie's motion for summary judgment is granted.

## Conclusion

For the foregoing reasons, the motions of defendants Bernstein and Lurie are granted. The motion of defendants Blue Horizon and Ruderman are denied. Defendant Gollan's motion is also denied. This opinion resolves docket items numbers 12, 56, 66, and 71.

Dated: New York, New York
       August 23, 2012

_____
Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/12