UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNORE REISECK,<br><br>    Plaintiff,<br><br> v.<br><br>UNIVERSAL COMMUNICATIONS OF MIAMI, INC., doing business as UNIVERSAL MEDIA, BLUE HORIZON MEDIA, INC., DOUGLAS GOLLAN, CARL RUDERMAN, GEOFFREY LURIE, DAVID BERNSTEIN,<br><br>    Defendants. | No. 06 Civ. 0777 (TPG) |

## **DEFENDANT DOUGLAS GOLAN' S PRE-TRIAL MEMORANDUM OF LAW**

                     Adam Gana, Esq.
                     Adam Weinstein, Esq.
                     GANA LLP
                     450 Seventh Avenue, Suite 1408
                     New York City, NY 10123
                     Tel: (212) 776-4251

                     *Attorneys for Defendant Douglas Gollan*

**Table of Contents**

TABLE OF AUTHORITIES .................................................................................................................ii
PRELIMINARY STATEMENT ........................................................................................................... 1
RELEVANT LEGAL STANDARDS ................................................................................................... 2
   POINT I ............................................................................................................................................ 2
      THE "OUTSIDE SALESMAN" EXEMPTION ...................................................................... 2
   POINT II ........................................................................................................................................... 6
      THE STATUS OF DEFENDANT GOLLAN AS AN "EMPLOYER" ................................. 6
   POINT III .......................................................................................................................................... 7
      PLAINTIFF'S ENTITLEMENT TO LIQUIDATED DAMAGES .......................................... 7
CONCLUSION ....................................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Barfield v. New York City Health and Hosp. Corp.*,
 537 F.3d 132 (2d Cir.2008) ............................................................................................... 8

*Billingslea v. Brayson Homes, Inc.*,
 104 CV 00962, 2006 WL 562198 (N.D. Ga. Mar. 7, 2006) ............................................... 5

*Christopher v. SmithKline Beecham Corp.*,
 132 S.Ct. 2156 (2012) ............................................................................................... 3, 4, 5

*Chu Chung v. New Silver Palace Restaurants, Inc.*,
 272 F.Supp.2d 314 (S.D.N.Y. 2003) ................................................................................. 6

*Herman v. RSR Sec. Servs. Ltd.*,
 172 F.3d 132 (2d Cir. 1999) ........................................................................................... 6, 7

*Irizarry v. Catsimatidis*,
 722 F.3d 99 (2d Cir. 2013) ................................................................................................ 6

*Reich v. Southern New England Telecommunications Corp.*,
 121 F.3d 58 (2d Cir. 1997) ............................................................................................. 7, 8

*Reiseck v. Universal Communications of Miami, Inc.*,
 591 F.3d 101 (2d Cir. 2010) .............................................................................................. 5

*Schmidt v. Eagle Waste & Recycling, Inc.*,
 598 F.Supp.2d 928 (W.D. Wisc. 2009) *aff'd* 599 F.3d 626 (10th Cir. 2010) ................... 5

*Switzoor v. SCI Engineering*,
 No. 11 Civ. 9332 (RA), 2013 WL 4838826 (S.D.N.Y., Sept. 11, 2013) .......................... 8

**Federal Statutes**

29 U.S.C. § 203(d) ..................................................................................................................... 6

29 U.S.C. § 213(a)(1) ............................................................................................................ 2, 4

29 U.S.C. § 216(b) ..................................................................................................................... 7

29 U.S.C. § 260 .......................................................................................................................... 8

**Federal Regulations**

29 C.F.R. § 541.500 ............................................................................................................... 2, 5

**New York State Statutes**

N.Y. Lab. Law. § 198(1–a) ....................................................................................................... 8

Defendant Douglas Gollan ("Gollan"), by and through his undersigned counsel, respectfully submits this pre-trial memorandum of law in opposition to plaintiff Lynore Reiseck's ("Plaintiff") claims for overtime pay under the Fair Labor Standards Act (the "FLSA" or the "Act") and the New York Labor Law ("NYLL").

## PRELIMINARY STATEMENT

Most people would be happy earning over $160,000 in a little over a year, plus a hefty expense account for regular travel and entertaining clients. Not Plaintiff. Instead, Plaintiff sought to squeeze more money out of her employer, defendant Universal Media Communications of Miami ("Universal") when her immediate supervisor, Gollan, would not allow her to permanently move to Florida and "commute" to New York for work. Upset, Plaintiff instituted this lawsuit alleging a host of claims against Universal and the other defendants; all but one of those claims were dismissed.

The sole surviving claim is Plaintiff's attempt to twist the purpose and intent of the FLSA and claim entitlement to overtime pay under the Act. But the FLSA, and particularly the overtime provision, was never intended to (and does not) apply to an employee in Plaintiff's position—someone who earned a high salary ($75,000/year in this case), was paid handsome commissions, and, most importantly, traveled outside of the office to meet, entertain, and sell to clients (Plaintiff incurred $40,000 in travel and entertainment expenses in just over a year). Indeed, that is exactly why Congress created an exception to the overtime requirements of the FLSA for an "outside salesman," which was undoubtedly what Plaintiff was for Universal. She had no other role. And it is precisely why Gollan did not want Plaintiff moving to Florida in the first place—her sales territory was primarily New York, New England, and Eastern Canada, and she was required to travel within this territory to call on clients and potential clients (not mention the frequent travel outside this territory to meet clients and conferences and trade shows). The results of her sales

1

efforts speak for themselves, as about 90% of her sales were face-to-face with the client, away from the office.

Finally, it should be remembered what Plaintiff was selling. She was selling advertising space for *Elite Traveler* magazine. *Elite Traveler* is a free publication, provided at no cost on private jets. Thus, advertising is the magazine's sole source of revenue, and considering the readership of the magazine, the space is expensive, averaging about $45,000 for a one-page advertisement. In other words, Plaintiff was not selling something that a customer would likely purchase based solely on an informal phone call.

Because Plaintiff was clearly an "outside salesperson," she is exempt from the overtime requirement of the FLSA, which was never intended to apply to employees such as Plaintiff.

## RELEVANT LEGAL STANDARDS

### POINT I

### THE "OUTSIDE SALESMAN" EXEMPTION

The sole FLSA and NYLL exception at issue in this case is the "outside salesman" exception. The FLSA exempts from its overtime provisions "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1).[1] The term "outside salesman" is defined by the Department of Labor Regulations to mean any employee "Who is employed for the purpose of and who is *customarily and regularly engaged away from his employer's place or places of business* in . . . (1) *Making sales* . . . or (2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer." 29 C.F.R. § 541.500 (emphasis added).[2] The U.S. Department of Labor defines "customarily and regularly" as

---

[1] The FLSA and the NYLL similarly define "outside salesperson."
[2] The relevant regulations were amended in August 2004, months after Plaintiff left Universal, but because the regulation do not apply retroactively, the regulations in place at the time of Plaintiff's employment are cited.

2

"…greater than occasional and less than constant." *See* Department of Labor, http://www.dol.gov/whd/regs/compliance/fairpay/fs17f_outsidesales.pdf (last visited Nov. 4, 2013).

As the U.S. Supreme Court recently noted, the exemption "is premised on the belief that exempt employees typically earned salaries well above the minimum wage *and enjoyed other benefits* that set them apart from the nonexempt workers entitled to overtime pay." *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2173 (2012) (citation, quotation marks, and alterations omitted) (emphasis added). In addition, it was "thought that exempt employees performed a kind of work that was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium." *Id.*

It is for these reasons that the Court stated that the petitioners in that case"—each of whom earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work related to his assigned portfolio of drugs in his assigned sales territory—are hardly the kind of employees that the FLSA was intended to protect." *Id.* Thus, the Court concluded, because "Petitioners . . . worked away from the office, with minimal supervision, and [] were rewarded for their efforts with incentive compensation[, i]t would be anomalous to require respondent to compensate petitioners for overtime." *Id.*

Similarly, Plaintiff is clearly not the kind of employee that the FLSA's overtime provisions were designed to protect. Plaintiff was paid a salary of $75,000 per year, plus commission. With that commission, Plaintiff earned a total of about $165,000 in the little more than a year that she worked for Universal. Most significantly, Plaintiff spent most of her time away from the office,

3

and about 90% of her sales were concluded at the customer's place of business or somewhere out of the office, and face-to-face with the customer. Indeed, in her deposition, Plaintiff acknowledged that at least 50% of her work was outside of New York, for sales calls, meeting with clients and potential clients, and industry conferences and events. Furthermore, even when in New York, Plaintiff admits that she typically, at the very least, had one meeting out of the office per day, and sometimes more depending on the season and other factors, and this does not include the time she spent entertaining clients. Plaintiff spent so much time traveling and meeting with and entertaining clients, in fact, that she submitted (and was reimbursed for) almost $40,000 in travel and entertainment expenses in little over a year. These expenses were specifically related to making outside sales calls to customers and prospects, entertaining those customers and prospects outside the office, and traveling to various trade shows and conferences to meet clients and sell advertising.

Moreover, the Supreme Court noted that the FLSA's "emphasis on the 'capacity' of the employee counsels in favor of a functional, rather than a formal, inquiry, one that views an employee's responsibilities in the context of the particular industry in which the employee works." *Christopher*, 132 S.Ct. at 2170 (citing 29 U.S.C. § 213(a)(1)). Here, Plaintiff was responsible for selling advertising space for *Elite Traveler* magazine, a high-end publication that is provided free on private jets. Because the company earns no money on sales of the magazine, its only source of revenue is advertising, which, given the status of the magazine's readers, is focused on luxury items and is very expensive. Thus, Plaintiff was clearly responsible for selling a "product" that required personal customer attention and a lot of travel and entertaining to earn a client's business, not something typically sold over an informal phone call.

Accordingly, it is readily apparent that Plaintiff's activities fall squarely within the capacity of an outside salesperson. As Plaintiff acknowledges in her pre-trial brief, an "'outside salesman'

4

makes his living by calling on customer's at their place of business or home," and the job "typically involves a lot of travel-either local or out-of-town-as well as irregular hours." *Billingslea v. Brayson Homes, Inc.*, 104 CV 00962, 2006 WL 562198, *8 (N.D. Ga. Mar. 7, 2006) Based on the foregoing, this quote couldn't be more apt in describing Plaintiff's duties.

Moreover, to the extent Plaintiff might have spent time in the office each day when she was in New York does not alter her status as an exempt "outside salesperson." Any such time was clearly minor compared to her outside-of-the-office activities as described above, and, as Plaintiff admitted in an affidavit, consisted of "preparing for sales calls [and] working with a sales assistant to create sales proposals." These activities are merely incidental to Plaintiff's primary role of selling advertising and are thus not considered nonexempt working hours. 29 C.F.R. § 541.500 ("work performed incidental to and in conjunction with the employee's own outside sales or solicitations . . . shall not be regarded as nonexempt work"); *Reiseck v. Universal Communications of Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010) ("The record shows that Reiseck's primary duty was to sell specific advertising space to clients."); *see also Schmidt v. Eagle Waste & Recycling, Inc.*, 598 F.Supp.2d 928, 937 (W.D. Wisc. 2009) ("The regulation does not require an employee be away from the office a majority of the time; it requires only that an employee be away from the office when conducting her primary duties, which in this case are her sales activities."), *aff'd* 599 F.3d 626 (10th Cir. 2010).

In short, just like the petitioners in *Christopher*, Plaintiff "worked away from the office, with minimal supervision, and [she] w[as] rewarded for [he]r efforts with incentive compensation. It would be anomalous to require [Gollan] to compensate [Plaintiff] for overtime" and inconsistent "with the apparent purpose of the FLSA's exemption for outside salesmen."[3]

---

[3] It should be noted also that Plaintiff misstates that she was terminated, when in fact she chose to resign after Gollan did not approve of relocating to Florida and "commuting" to work in New

5

**POINT II**

**THE STATUS OF DEFENDANT GOLLAN AS AN "EMPLOYER"**

Only an "employer" may be liable under the FLSA.[4] The statute defines the term "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has "instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citation omitted). In attempting to make this determination, the Second Circuit considers four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citations omitted).

The Second Circuit, however, has emphasized that these factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather "they provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 105 (citations, quotation marks, and alterations omitted). In addition to the factors of the "economic reality test," the court must also consider the scope of an individual's authority or "operational control" over an employee. *Id.* at 106. A "person exercises operational control

---

York. Plaintiff's accounts were located primarily in New York, the New England, Eastern Canada and Bermuda, and moving to Florida would have adversely impacted her ability to continue in her role of traveling within her territory to meet and entertain clients and prospects.

[4] This applies to the New York Labor Law as well, and the New York law is virtually the same as the law in the Second Circuit under the FLSA with regards to who is an "employer." *See, e.g.*, *Chu Chung v. New Silver Palace Restaurants, Inc.*, 272 F.Supp.2d 314, 318 n.6 (S.D.N.Y. 2003).

6

over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.  At the end of the day, the "answer in any particular case will depend, of course, on the totality of the circumstances." *Id.*

Here, Gollan did hire Plaintiff and had the power to at least determine that Plaintiff could permanently relocate to Florida and remain employed by Universal.  On the other hand, Plaintiff was largely responsible for determining her own schedule with regard to setting client and prospect meetings, and for entertaining clients and prospects.  Moreover, Ruderman, as Plaintiff concedes, had ultimate decision-making authority regarding company policies and had the final say regarding Universal business.  Ruderman was also directly involved in the operations and decisions affecting the conditions of employment and compensation for company employees, including Plaintiff.  Finally, Gollan was not responsible for maintaining employment records or deciding whether or not to pay Plaintiff overtime.

Considering the totality of the circumstances, it is defendant Ruderman, and not defendant Gollan, who should be considered Plaintiff's "employer" under the FLSA.

## POINT III

## PLAINTIFF'S ENTITLEMENT TO LIQUIDATED DAMAGES

Both federal and New York law provide for an award of liquidated damages to plaintiffs who establish that an employer has failed to pay required wages.  Under the FLSA, an employer who violates the overtime provisions of the Act "is liable for unpaid wages 'and an additional equal amount as liquidated damages.'"  *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 70 (2d Cir. 1997) (quoting 29 U.S.C. § 216(b)).  The court, however, has the discretion not to award any or some liquidated damages if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had

reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *see also Reich*, 121 F.3d at 70-71.

"To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictate of the FLSA and then act to comply with them." *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 150 (2d Cir.2008); *see also Switzoor v. SCI Engineering*, No. 11 Civ. 9332 (RA), 2013 WL 4838826, *5 (noting that good faith "requires that a defendant produce 'plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it'") (S.D.N.Y. Sept. 11, 2013) (quoting *Reich*, 121 F.3d at 71).[5]

In this case, despite the statute's presumption in favor of liquidated damages and defendants' apparent failure to ascertain whether Universal's payment structure complied with the requirements of the FLSA, Plaintiff should not be entitled to liquidated damages. It is clear, as discussed above in Point I, *supra*, Plaintiff was paid a very handsome salary plus substantial commissions, and that, from the outset of her employment, her job required extensive travel, entertainment, and calling on clients and potential clients outside of the office. Further, there is unquestionably minimal guidance in the case law interpreting the FLSA, and the application of the Act's overtime requirements to Plaintiff and others similarly situated would be precedent setting.

Accordingly, there can be no suggestion that the defendants and certainly Gollan did not act in good faith in not believing that Plaintiff was entitled to overtime pay. Moreover, given that Plaintiff's duties were entirely consistent with an "outside salesman" and that there is no case law supporting the opposite conclusion, even if Gollan consulted an employment attorney to ascertain

---

[5] "Similarly, under the NYLL, an employee is entitled to liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" *Switzoor*, 2013 WL 4838826 at *5 (quoting N.Y. Lab. Law. § 198(1–a)).

8

Universal's compliance with the FLSA, it is almost certain that the attorney would concluded that Universal was in compliance and that Plaintiff was exempt from overtime pay.

## CONCLUSION

Based on the foregoing, Defendant Gollan respectfully submits that Plaintiff was exempt from the overtime requirements of the FLSA and the NYLL because she was an "outside salesperson" when employed by Universal. Moreover, even if it were determined that Plaintiff was not an "outside salesperson" and thus not exempt, defendant Gollan should not be personally liable as Plaintiff's "employer," as ultimate control of company policies and over the conditions of Plaintiff's employment remained with Ruderman. Finally, defendants generally and Gollan in particular always acted in good faith in regards to compensating Plaintiff fairly, and there was no reason to believe that defendants were not in compliance of the FLSA or the NYLL (because they always were in compliance). Thus, it is respectfully submitted that Plaintiff is not entitled to a judgment on her claim for overtime pay against Gollan.

Dated: November 4, 2013    GANA LLP
New York, NY

By: ___/s/ Adam J. Gana_____
Adam Gana, Esq.
Adam Weinstein, Esq.
450 Seventh Avenue, Suite 1408
New York City, NY 10123
Tel: (212) 776-4251
Email: agana@ganallp.com
          aweinstein@ganallp.com

*Attorneys for Defendant Douglas Gollan*